[Crim. No. 2241. Third Dist. Mar. 6, 1951.]

THE PEOPLE, Respondent, v. C. K. PATTERSON, Appellant.

Oscar A. Kistle, Public Defender, for Appellant.

Edmund J. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

PEEK, J.—Following a trial by jury, appellant was found not guilty of the crime of assault with a deadly weapon with the intent to murder, and guilty of a violation of section 4502

of the Penal Code, possession of a deadly weapon by a prison inmate. A codefendant, Mullen, who was charged with a like violation of said section 4502, was found not guilty. Patterson alone appeals from his judgment of conviction and from the order of the court denying his motion for a new trial.

A short summary of the evidence (the sufficiency of which is not attacked) shows that for approximately two years prior to the alleged act appellant Patterson and defendant Mullen had been threatened by the complaining witness Johnson, and that on the morning of the alleged offense Johnson stated to another inmate, from whom he endeavored to obtain a knife, that he was having trouble with Patterson. Sometime thereafter as the inmates were standing in the noon hour chow line, an inmate, whom Patterson refused to identify, shoved something into his pocket, saying as he did so, "You had better take this, that guy [Johnson] is behind you and he is looking for trouble." Almost immediately thereafter Johnson attacked appellant who reached into his pocket, saw the point of a knife sticking out, pulled it out and told Johnson to drop the knife he was holding. In the ensuing fight Patterson admittedly cut Johnson with the knife he had so obtained.

Appellant contended throughout the course of the trial, which lasted seven days, that he had no knowledge of what the other inmate thrust into his pocket until the attack by Johnson. The record discloses no evidence to the contrary other than that of Johnson, who testified that he did not see Patterson or Mullen in the chow line; that he had had no arguments with either of the two defendants; that he had no conversation with anyone on the morning of the fight concerning the defendants, and that he did not know who stabbed him.

Following the instructions by the court, the jury retired at 11 o'clock a. m. At 3:15 p. m. it returned requesting further "information on what constitutes self defense," whereupon the court discussed and reread the instructions previously given on that phase of the case. At 4:45 p. m. it again returned requesting that certain testimony be reread, and that the instructions on self-defense be reread. The court did so, and during the course of the rereading of such instructions, gave further extemporaneous explanations thereof. At 5:55 p. m. when the jury again returned, the foreman stated:

"We would like a little more explanation of the section 4502 in the Criminal Code.

"THE COURT: As to the second count and the third count, is that right?

"FOREMAN NILSSON: Second count.

"THE COURT: All right, I will read it to you. Section 4502, and as far as pertinent to this case is as follows:

" 'Every prisoner committed to a State prison who while at such prison', or any other State prison, that is any person in a State prison, 'possesses or carries upon his person or has under his custody or control any instrument or weapon of any kind commonly known as a blackjack, slingshot, billy, sand club, sand bar or metal knuckles or any explosive substance or any dirk or dagger or sharp instrument is guilty of a public offense.' "

After so reading, the court stated:

"Now, I will read it to you again:"

Following the second reading of the quoted portion, the court, turning to Mrs. Ludwigsen, a member of the jury, said:

"If you want to ask a question, you may ask it.

"JUROR LUDWIGSEN: Your Honor, I would like to know if there is any further definition of the term 'possession'. And under control, under his control."

In response to this query the court then stated as follows:

"Well, if it is in his possession, that would be on his person. In this case the question for you to determine is as to whether or not these defendants or either of them had in their or in his possession a knife, and of course, you would have to, all twelve of you, would have to agree upon which knife he possessed, whether it is People's Exhibit 6 or People's Exhibit 7. Now, *under his control means to have control of it, but to have in his possession means to be on his person, in his hand or on his person or in his pocket; that is having it in his possession.* Now, do you think that makes it plain?

"JUROR LUDWIGSON: Yes, Your Honor." (Italics ours.)

The sole contention of appellant is that the error of the trial court in omitting to give a formal instruction or definition of the term "possession" became all the more prejudicial by failure to include any mention of the element of knowledge in the oral instruction above quoted, since by that instruction the jury was, in effect, told that whether or not appellant had knowledge of the presence of the knife was immaterial because the fact of having the knife in his pocket constituted the crime.

In support of his contention appellant particularly relies upon *People* v. *Gory*, 28 Cal.2d 450 [170 P.2d 433]. In that

case guards at a county honor farm found particles of marijuana in a locker located at the foot of defendant's bed which, although under his control, was by regulation always kept unlocked. At the conclusion of the trial the court read and reread an instruction to the effect that in order for defendant to have possession of the prohibited article the jury must be convinced beyond a reasonable doubt that the defendant knowingly had such objects in his possession. Thereafter the court withdrew the instruction from the consideration of the jury. In reversing the case for that reason the Supreme Court said: ". . . knowledge of the *existence* of the object is essential to 'physical control thereof with the intent to exercise such control' and such knowledge must necessarily precede the intent to exercise, or the exercise of, such control." The court further pointed out that the principal fact relied upon by the prosecution was the finding of marijuana in defendant's unlocked box and the denial by defendant of any knowledge of its presence. ▮ Here we have a like situation, the principal fact relied upon by the prosecution was the possession of the knife which, according to defendant Patterson, was placed in his pocket by another inmate without his knowledge. Under similar circumstances said court, in the Gory case, stated, "it was the duty of the trial court, on proper instructions, to submit to the jury the question as to whether the defendant had knowledge of the presence of the marijuana." (Citing cases, p. 457.) It necessarily follows that it was likewise the duty of the court in the present case to so instruct the jury. In discussing further the problem so presented, the Supreme Court stated:

"To fail to instruct on that point might well have misled the jury into believing either that knowledge was not essential or that any object found among defendant's personal effects was conclusively presumed to be there of his own knowledge. The error which would be involved in an express declaration to that effect is obvious, for knowledge is essential and though the finding of an object among defendant's effects would support an inference, it would not give rise to a conclusive presumption that the object was there with defendant's knowledge." (P. 457.)

Here, again, as in the Gory case, the prosecution contends that the instructions must be considered as a whole and when so viewed it is apparent that the jury was properly instructed; and that the contention of appellant is so extreme and narrow as to come squarely within the provisions of section 4½ of

article VI of the Constitution. Particularly is this true they say since "the jury was properly instructed on the element of knowledge by the following instruction:

"In every crime or public offense there must exist a union or joint operation of act and intent or criminal negligence. The intent with which an act is committed is manifested by the circumstances connected with the offense and the sound . mind and discretion of the person accused. All persons are of sound mind who are neither idiots, lunatics nor affected with insanity. .

"As to the intent or intention with which an act is committed, if you find that such act was committed, such intent or intention is a matter entirely within the province of the jury, who must, from a full and careful consideration of the testimony and from all of the circumstances connected with the commission of the act, arrive at a determination as to whether such act was committed with a criminal intent."

The instruction so relied upon by the prosecution made no more reference to the necessary element of knowledge than the instructions in the Gory case, where it was said that the element "of knowledge in the sense required for a finding of guilty of the statutory offense involved, and it is questionable whether from mere connotation of the definition itself an inference of the necessity for such finding would arise." That court also observed that the situation was not clarified to an appreciable extent by another instruction which correlated defendant's guilt with "wilfully" having "in his possession" marijuana, and concluded its opinion with the comment:

"It may be possible to argue that taking the instructions as a whole, they were sufficient to have informed the jury in a general roundabout way that before defendant could be convicted of the statutory offense of the possession of marijuana, the evidence must show his *knowledge of the presence* of said property in his box; but since knowledge, in that limited sense, is an essential element of the offense, he was entitled under the circumstances to a specific instruction, such as the requested instruction 12, to clarify the situation.

"It therefore follows that the reading, rereading, and subsequent withdrawal of the requested instruction 12 constituted error and we are convinced, under the state of the evidence presented on this essential element of knowledge, that such error must be treated as prejudicial." (Pp. 458, 459.)

680

In his concurring opinion Justice Schauer, who was joined by Justice Carter, particularly pointed out that the *withdrawal* of the instruction was a *failure* to give the instruction.

Thus, it may well be argued that when the court, by its extemporaneous instruction, told the jury that possession meant merely the having of the knife *in his pocket,* it completely eliminated any consideration of the question of the necessary element of *"knowledge of the presence of the object* as embraced within the concept of 'physical control with the intent to exercise such control,' " as held in the Gory case.

The judgment and order are reversed.

Adams, P. J., and Van Dyke, J., concurred.