[Crim. No. 3560.   First Dist., Div. One.   Mar. 13, 1959.]

THE PEOPLE, Respondent, v. ANDREW EMMETTE POPE, Appellant.

David Henry Gill, under appointment by the District Court of Appeal, and Werner D. Meyenberg, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant was convicted of a violation of section 4502 of the Penal Code in that, while an inmate of a

state prison, he was in the unlawful possession of a knife.

There can be no doubt that on the date in question, March 20, 1958, defendant was in possession of a knife. The knife was found in his cell. Defendant makes no contention to the contrary. It is his contention that there is no substantial evidence that he had the requisite knowledge of the fact that the knife was in his cell; in fact, he contends that the evidence is to the contrary. An examination of the record shows that, on this basic issue, the evidence was in conflict.

The defendant admitted three prior felony convictions, including the one for which he was serving time in Soledad Prison in March of 1958. The judgment here appealed from provides that the sentence shall run consecutively with the sentence defendant was serving when the offense here involved was committed.

On March 20, 1958, the prison officials conducted a routine search of the prisoners and their cells at Soledad. A correctional officer, Jones by name, searched defendant and his cell. Defendant was the sole occupant of that cell. Jones testified that there was a stack of papers laying on defendant's bunk, and that inside these papers he discovered the knife. At the very instant of discovery, and before Jones had examined the balance of the papers, defendant stated: "You found all there is to find." The next day, on March 21, 1958, a discipline committee hearing was held at the prison. One Burnett, an associate warden, read a report of the discovery of the knife to defendant and asked him how he pleaded. Defendant replied that his plea was "not guilty." When Burnett asked defendant if he had ever seen the knife before "[h]e said that he had seen it in his cell, that one of the fellows had passed it to him to admire the good workmanship on this knife . . . while he was looking at this knife in his cell, he said someone came by, some unidentified inmate and said, 'The goon squad is coming. Give it back.'" The witness also testified that defendant then stated that he told this unidentified inmate "'To hell with you,' or words to that effect, and threw the knife on his bed." The knife was actually hidden in the newspapers.

It is true that the version of the incident given by defendant and his fellow prisoner witnesses at the trial differed materially from that of the witnesses for the prosecution. One prisoner, Munroe by name, testified that during the serving of breakfast on the morning in question, he handed to defendant a bunch of newspapers that another unidentified inmate

had given him to deliver to defendant, and that defendant placed the papers on his bed without looking at them. A minute or so later the prison officials arrived to make the search that revealed the knife. This same witness testified that after defendant's clothing was searched, defendant did not remain in or in front of his cell, but went up to another tier of cells. This was corroborated by another prisoner witness. Another prisoner testified that on the morning of the search he had sent a bundle of newspapers to defendant via Munroe, and that he had secured these newspapers from various places, including "from a fellow downstairs."

Defendant's testimony was to the effect that he had been handed some newspapers which he had just placed on his bunk when the search was made. After his clothing had been searched he went upstairs and did not know that the knife was discovered until one of the officers called him downstairs. He specifically denied making either of the admissions about the knife testified to by the officers.

There was substantial evidence from several prison officials to the effect that, after defendant was personally searched, he did not go upstairs but, at all pertinent times, remained directly in front of his cell. Other prison officials testified that, although prisoner Munroe was in the view of the witnesses at all times, they did not see him carrying any newspapers.

There can be no doubt that one of the elements of the crime defined by section 4502 of the Penal Code is knowledge on the part of the accused that the prohibited weapon was in his possession. (*People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433]; *People* v. *Patterson,* 102 Cal.App.2d 675 [228 P.2d 51].)

Defendant and his witnesses testified to facts which, if believed, would have supported a finding that defendant did not have knowledge that the knife was in the newspapers. Much of this testimony was contradicted by the prosecution's witnesses. Moreover, there was the evidence of Jones and of Burnett to the effect that defendant twice directly admitted that he knew that the knife was in his cell prior to the search. This evidence supports the implied finding in question.

It should be pointed out that the trial judge, the Honorable Anthony Brazil, was very careful in his instructions to point out to the jury that knowledge was an essential element of the crime.

The defendant also makes an argument to the effect that he was denied equal protection of the law. This argument

is that "commonly the offense of which Appellant was charged is handled as an administrative matter at the prison without the filing of criminal charges" and that the filing of a criminal charge against defendant in this "isolated case makes the application of section 4502 of the California Penal Code unequal in its application and arbitrary." (App. Op. Br., p. 4.)

Even if it be assumed that this court could take judicial notice of the fact, if it be a fact, that prisoners are often disciplined intramurally for the offense here charged, a somewhat doubtful assumption (see generally *Weitzenkorn* v. *Lesser*, 40 Cal.2d 778 at p. 787 [256 P.2d 947]), it would be of no avail to defendant. ▇ As was said in *People* v. *Oreck*, 74 Cal.App.2d 215, 222 [168 P.2d 186]: "It is not a denial of equal protection that one guilty person is prosecuted while others equally guilty are not." (See also *People* v. *Hess*, 104 Cal.App.2d 642 [234 P.2d 65]; *People* v. *Gordon*, 105 Cal. App.2d 711 [234 P.2d 287].) ▇ The fact that prison officials may, without criminal prosecution, sometimes impose punishment for such offenses is not, as defendant contends, an invasion of the judicial powers of the courts, but is simply a necessary and indispensable exercise of the disciplinary powers which prison officials necessarily have and must have to operate a state prison.

It should also be mentioned that some time ago counsel for defendant filed a petition for a writ of error *coram vobis* in this case. This petition proffered some claimed newly discovered evidence in the form of an affidavit which, if believed, might support defendant's claim of innocence. This court, without opinion, denied the application for the writ. The Supreme Court denied a hearing. Although defendant does not rely on this claimed newly discovered evidence on this appeal, we think it appropriate to note that the proffered evidence, even if admitted, would merely have been cumulative of testimony already in the record. In view of the conflict in the evidence, the affidavit would not warrant or require a reversal.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 10, 1959, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1959. Peters, J., did not participate therein.