[Crim. No. 20930. Second Dist., Div. Four. May 31, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
RICARDO JURADO, Defendant and Appellant.

**COUNSEL**

Clifford Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, James H. Kline and Douglas B. Noble, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FILES, P. J.**—Defendant was charged by information in count I with burglary (Pen. Code, § 459) and in count II with carrying a concealed weapon (Pen. Code, § 12025), a misdemeanor. It was further alleged in count I that he was armed with a deadly weapon at the time of the commission of the offense. A jury found defendant guilty on counts I and II, and fixed the degree of burglary at first degree. Defendant was then sentenced to state prison for the term prescribed by law on count I, and to six months in the county jail on count II, to run concurrently. The judgment recited that the armed allegation was limited to Penal Code section 1203, and that Penal Code sections 3024, 12022 and 12022.5 were inapplicable. Defendant is appealing from that judgment.

A brief reference to the testimony will illuminate the issues to be considered. At about 1:30 a.m. on February 12, 1971, El Monte City Police Officers Curnow and Weldon went to an automobile bodyshop in response to a silent alarm call. The premises consisted of a building and a yard enclosed by a chain link fence.

They heard a loud clanking sound from inside the building, like a metal tool dropping onto cement, and observed that a metal door had been bent upward and out about one foot from its frame.

Officer Weldon observed defendant standing flat up against the building, facing it, between the building and the fence. Defendant then went into a crouch position with his knees up against his chest and his hands up in front of him.

Weldon ordered defendant to walk toward him and place his hands on the fence that separated them. Defendant stood up, faced the officer, took several steps backward, grabbed the front of his jacket with his left hand and reached into his pocket with his right hand. As he was doing this, Officer Weldon fired one shot at him. Defendant removed his right hand from his jacket and dropped an object. Defendant came forward and submitted to arrest. The officer picked up the object, which was a loaded .22 caliber revolver.

Officer Curnow arrested two men who had been inside the building. As these men were brought out to where defendant was being held, defendant conversed with them in Spanish.

Officer Weldon was of the opinion that defendant was sober. His breath lacked any odor of alcohol. A breathalizer machine was available at the police station for testing the breath, but no such test was given defendant.

Defendant testified that he had been drinking since 10 o'clock of the morning preceding the burglary, that he was drunk and crawled under the fence at the bodyshop premises, where he passed out. He testified he remembered nothing after that until an officer was "hollering" at him. He denied having put his hand in his pocket, and denied having had any gun in his possession.

The evidence is unquestionably sufficient to sustain the conviction on each count. Defendant's presence inside the chain link fence, his conduct when discovered, his conversations with those who had been inside the building, and his possession of a loaded revolver all tend to support the inference that he was aiding a burglary.

Defendant's first contention is that the trial court erred in failing to instruct the jury that knowledge of the concealed firearm was an element of the alleged violation of Penal Code section 12025. That section provides that except as otherwse provided, ". . . any person who carries concealed upon his person or concealed within any vehicle which is under his control or direction any pistol, revolver, or other firearm capable of being concealed upon the person. . . ." is guilty of a misdemeanor. Courts have assumed that, under the various statutes making criminal the possession of a weapon, knowledge of the presence and character of the object is an element of the offense. (See *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 868 [76 Cal.Rptr. 642, 452 P.2d 930]; *People* v. *Gant* (1968) 264 Cal.App.2d 420, 424 [70 Cal.Rptr. 801]; *People* v. *Burnett* (1967) 251 Cal.App.2d 651, 657 [59 Cal.Rptr. 652]; *People* v. *Mendoza* (1967) 251 Cal.App.2d 835, 842 [60 Cal.Rptr. 5]; *People* v. *Davis* (1958) 157 Cal.App.2d 33, 36 [320 P.2d 88]; *People* v. *Pearson* (1957) 150 Cal.

App.2d 811, 818 [311 P.2d 142]; *People* v. *Gonzales* (1925) 72 Cal.App. 626, 631 [237 P. 812].) None of those cases except *Gonzales* discusses the necessity of an instruction calling the jury's attention to this aspect of the case, and *Gonzales* did not decide it.

In the case at bench the court did instruct the jury that for the crime of possessing, there must be criminal intent, and "Where a person intentionally does that which the law declares to be a crime, he is acting with criminal intent. . . ." This instruction would indicate to a lay juror that the People were required to prove that the defendant knew he had the object. In the context of this case the absence of an instruction on the subject of knowledge could not have prejudiced defendant.

The conflict in the evidence here focuses on the question of possession, not knowledge. The officer testified he saw defendant pull an object from his clothing and drop it on the ground. The object was a loaded revolver. Defendant denied he had reached into his pocket and he denied that he had carried the gun. If defendant had done what the officer reported, there could be no doubt that defendant had known he was carrying a concealed weapon. The evidence in this case offers no rational basis for finding that defendant possessed the pistol without knowledge of its presence and nature. (Cf. *People* v. *Bowens* (1964) 229 Cal.App.2d 590, 599 [40 Cal.Rptr. 435], a narcotics possession case, where failure to instruct on knowledge was harmless.)

Defendant's second contention is that the trial court erred in failing to instruct, *sua sponte,* "with regard to the law of diminished capacity." The argument is based upon the testimony produced by the defendant that he was drunk. The trial court instructed the jury that if the evidence showed the defendant was intoxicated, it should consider his state of intoxication in deciding if he had the specific intent to steal which was an element of the offense of burglary. But there was no such instruction given with respect to the concealed weapon charge.

The only case which has come to our attention concerning the effect of intoxication upon a person charged with a possession offense is *People* v. *Foster* (1971) 19 Cal.App.3d 649, 653-656 [97 Cal.Rptr. 94]. There the defendant was charged with possession of heroin. The opinion of the Court of Appeal states that since knowledge was an element of the offense charged, the trial court should have, on its own motion, instructed the jury to consider the fact that the accused was intoxicated; but the court held that the absence of such an instruction was not prejudicial in that case.

In the case at bench, we deal with a crime different from the narcotics offenses in some significant respects. ██ The carrying of concealed firearms is prohibited as a means of preventing physical harm to persons other than the offender. It is an activity which can readily be committed by an intoxicated person, and with even greater hazard to public safety. Only minimal mental capacity is required for a person to be aware that he is carrying a firearm concealed upon his person. For this particular offense we find guidance in the analysis contained in *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370], and *People* v. *Rocha* (1971) 3 Cal.3d 893 [92 Cal.Rptr. 172, 479 P.2d 372], which held that the trial court should not instruct the jury to consider evidence of defendant's intoxication in determining whether he committed assault with a deadly weapon on a peace officer or any of the lesser assaults included therein. In the *Hood* opinion the court said (at p. 458): "Alcohol apparently has less effect on the ability to engage in simple goal-directed behavior, although it may impair the efficiency of that behavior. In other words, a drunk man is capable of forming an intent to do something simple, such as strike another, unless he is so drunk that he has reached the stage of unconsciousness. What he is not as capable as a sober man of doing is exercising judgment about the social consequences of his acts or controlling his impulses toward anti-social acts. He is more likely to act rashly and impulsively and to be susceptible to passion and anger. It would therefore be anomalous to allow evidence of intoxication to relieve a man of responsibility for the crimes of assault with a deadly weapon or simple assault, which are so frequently committed in just such a manner."

Those words are particularly appropriate here. The mental element involved in concealing a firearm on the person is no more significant than the mental element of assault. ██ The policy considerations for rejecting the intoxication defense to assault are quite as applicable where the charge is possession of a dangerous weapon. ██ We therefore conclude that an intoxication instruction was not required for the weapons offense in the case at bench.

██ There is no basis for defendant's criticism of the arresting officers that they failed to give him a breath-alcohol test to prove his state of intoxication. The officers believed him to be sober, and defendant made no request for a test. There is no merit to counsel's argument on appeal that, because of the lack of a breathalizer test, the trial court should have instructed the jury, in accordance with Evidence Code section 412, that evidence should be viewed with distrust where stronger evidence is available and not produced. No request for such an instruction was made at the trial.

■ Counsel for defendant properly points out that the sentence must be modified to conform to the rules against double punishment. Defendant was sentenced to state prison on the burglary count and to six months in the county jail on the weapons count, the terms to run concurrently. The Supreme Court has held that proscribed multiple punishment results from the imposition of multiple sentences even though the sentences are wholly concurrent, and the reviewing court is required to eliminate the sentence for the lesser offense. (*People* v. *Diaz* (1967) 66 Cal.2d 801, 807 [58 Cal.Rptr. 729, 427 P.2d 505].)

The weapon was possessed by defendant in the commission of the burglary and is the basis for elevating that offense to the first degree. (Pen. Code, § 460.) There was no evidence defendant possessed the gun before or after the burglary. In *People* v. *Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862] the Supreme Court held that the robbery punishment statute (Pen. Code, § 213) is a special statute fixing the penalty for a conviction of armed robbery, making inapplicable Penal Code sections 3024 and 12022 which also prescribe punishment for certain armed offenders. This rule necessarily applies to a burglary conviction where the possession of a weapon is the sole basis for finding the offense to be of the first degree. The *Floyd* reasoning would also preclude additional punishment under section 12025 for possession of the weapon.

Penal Code section 654 also appears to be applicable. That section provides "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ." Without the gun, defendant's punishment for second degree burglary would have been imprisonment in county jail for not exceeding one year, or in state prison from 1 to 15 years. With the gun his punishment is imprisonment from five years to life. (Pen. Code, § 461.) Defendant is severely punished under the burglary statute for possession of the gun.

■ Several recent decisions establish the modern rule that a defendant may not be punished both for possession of a weapon and for another offense in which the weapon is used, where the evidence does not show possession for any other purpose. (*People* v. *Wasley* (1970) 11 Cal.App.3d 121 [89 Cal.Rptr. 418] (double prosecution: robbery and possession of gun); *People* v. *Venegas* (1970) 10 Cal.App.3d 814, 820 [89 Cal.Rptr. 103] (assault and possession of gun); *In re McWhinney* (1968) 267 Cal. App.2d 691, 695 [73 Cal.Rptr. 291] (burglary and possession of black-jack); *People* v. *Burnett* (1967) 251 Cal.App.2d 651, 657 [59 Cal.Rptr. 652] (robbery and possession of gun); *In re Grossi* (1967) 248 Cal.App.2d

315 [56 Cal.Rptr. 375] (double prosecution: robbery and possession of gun).)

There are earlier cases which upheld multiple prosecution (and *a fortiori* multiple punishment) for robbery and possession of the robbery weapon. (See *People* v. *Warren* (1940) 16 Cal.2d 103 [104 P.2d 1024]; *People* v. *Moore* (1956) 143 Cal.App.2d 333 [299 P.2d 691]; *People* v. *Perry* (1929) 99 Cal.App. 90 [277 P. 1080].) These cases have not been expressly overruled or disapproved by the Supreme Court. But they cannot be reconciled with the more recent decisions of the Supreme Court in *Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], and *People* v. *McFarland* (1962) 58 Cal.2d 748, 760 [26 Cal.Rptr. 473, 376 P.2d 449], which set forth the "intent and objective" test for multiple punishment, and *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822 [48 Cal. Rptr. 366, 409 P.2d 206] which established standards limiting multiple prosecutions. We therefore conclude that the more recent Court of Appeal decisions cited above reflect the governing law.

The sentence for violation of Penal Code section 12025 is reversed. In all other respects the judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.