[No. F010268. Fifth Dist. Oct. 28, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM OSBORNE REYNOLDS, Defendant and Appellant.

## COUNSEL

Alister McAlister, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael J. Weinberger and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

THE COURT.*—A jury convicted William Osborne Reynolds of possessing a sharp instrument while lawfully confined in a state prison, in violation of Penal Code section 4502.[1] FE Reynolds's sole contention on appeal is that the trial court committed prejudicial error by failing to instruct the jury, sua sponte, that he could only be convicted if the jury found that he knowingly possessed the instrument. We agree and reverse the judgment of conviction.

---

*Before Hamlin, Acting P. J., Best, J., and Sarkisian, J.†

[1] All statutory references are to the Penal Code.

†Assigned by the Chairperson of the Judicial Council.

FACTS

On August 21, 1987, Reynolds was an inmate at the California Correctional Institution at Tehachapi (CCI).[2] On that date, Correctional Officer Parent was assigned to Housing Unit 5, Level 4-A. Inside CCI there are actually five separate facilities; Level 4 is maximum security. Housing Unit 5 is a security housing unit (SHU). When SHU inmates are taken to the exercise yard, they are taken from their cells, placed in a holding cage, and then they and their clothing are searched. The clothing search includes bending and feeling of the inmates' shoes. The inmates are then let out onto the yard. When they return, they are again placed in the holding cell and searched, along with their clothing and shoes, before they are put back in their cells.

On the date in question, Reynolds and the other inmates were on the yard most of the morning. While there, the inmates were watched by an officer who was located about 15 feet above the base of the yard. However, no officer was actually on the yard itself.

When Reynolds returned from the yard, Parent searched him and his clothing. Only Reynolds and his cell mate were in the holding cell. As required by the prison's procedures, Reynolds disrobed and placed his clothing through a slot in the holding cell door. Inside the tongue of his left tennis shoe, Parent found a piece of sharpened plastic. The plastic was approximately three and one-half inches long and half an inch wide, and tapered to a point on one end. Parent discovered the plastic by feeling of the shoe.

At trial, Reynolds denied putting the plastic in the shoe and basically contended that either the object was not taken from one of his shoes or he was unaware of the object's presence. He specifically testified that the shoe in which the plastic was found was similar to one he was wearing on August 21, but that all of his shoes were distinctively marked. No such markings appeared on the shoe in question. Additionally, this shoe's tongue had a hole or loose threads in it; there were never any tears in the tongues of Reynolds's tennis shoes. Reynolds was not shown the object at the time it was allegedly seized, nor did he see the shoes he was wearing on August 21 after they were taken from him by Parent.

DISCUSSION

Reynolds contends that his conviction must be reversed because the trial court failed to instruct the jury sua sponte that the People had to

---

[2] Although titled a correctional institution, CCI is a state prison pursuant to section 2048.

prove that Reynolds knew of the plastic's presence. The Attorney General concedes that knowing possession is a requirement and appears to concede that the trial court erred. However, he contends that the trial court's instruction on general criminal intent (CALJIC No. 3.30 (4th ed. 1979)), coupled with the prosecutor's argument to the jury, cured any error.

■ It is the trial court's duty to see that the jurors are adequately informed on the law governing all elements of the case to the extent necessary to enable them to perform their function. This duty is not always satisfied by a mere reading of wholly correct, requested instructions. (*People* v. *Sanchez* (1950) 35 Cal.2d 522, 528 [219 P.2d 9].) A trial court has a sua sponte duty (1) to instruct on general principles of law relevant to issues raised by the evidence (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913]; disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]); and (2) to give explanatory instructions when terms used in an instruction have a technical meaning peculiar to the law (*People* v. *Valenzuela* (1985) 175 Cal.App.3d 381, 393 [222 Cal.Rptr. 405]). ■ A defendant has a constitutional right to have the jury determine every material issue presented by the evidence, and a denial of that right constitutes a miscarriage of justice regardless of the strength of the prosecution's case. (*People* v. *Mayberry* (1975) 15 Cal.3d 143, 157 [125 Cal.Rptr. 745, 542 P.2d 1337].)

■ Section 4502 provides in pertinent part: "Every person confined in a state prison or who, . . . while under the custody of prison officials, officers or employees, possesses or carries upon his person or has under his custody or control any . . . sharp instrument, . . . is guilty of a felony. . . ." In order to show a violation of this statute, the prosecution need not prove the intent or purpose for which the prohibited instrument was possessed. (*People* v. *Steely* (1968) 266 Cal.App.2d 591, 594 [72 Cal.Rptr. 368].) It must, however, prove that the defendant knew the prohibited object was in his possession. (*Ibid.*; *People* v. *Patterson* (1951) 102 Cal.App.2d 675, 678 [228 P.2d 51]; *People* v. *Pope* (1959) 168 Cal.App.2d 666, 668 [336 P.2d 236]; *People* v. *Wells* (1968) 261 Cal.App.2d 468, 479 [68 Cal.Rptr. 400]; see by analogy narcotics cases such as, *People* v. *Gory* (1946) 28 Cal.2d 450, 455-456 [170 P.2d 433] [defendant need not know possession of object unlawful but essential that he knew object present]; *People* v. *Redrick* (1961) 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255] [mere proof of opportunity of access to place where found insufficient].)

In the case at bench, the jury was instructed in part: "Every person confined to a state prison who possesses upon his person, or has under his custody or control, any sharp instrument, is guilty of a violation of Penal

Code Section 4502, which is the charge in this particular case. [¶] In this particular crime, there must exist a union or joint operation of act or conduct and general criminal intent. [¶] To constitute general criminal intent, it is not necessary that there should exist an intent to violate the law. [¶] When a person intentionally does that which the law declares to be a crime, he is then acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

In reviewing these instructions as a whole (cf. *People* v. *Burgener* (1986) 41 Cal.3d 505, 538-539 [224 Cal.Rptr. 112, 714 P.2d 1251]; *People* v. *Billings* (1981) 124 Cal.App.3d 422, 427-428 [177 Cal.Rptr. 392]), we conclude that prejudicial instructional error occurred. Where possession is an element of the offense, the trial court has a duty to submit to the jury, with proper instructions, the question of whether the defendant had knowledge of the object's presence. (*People* v. *Patterson, supra,* 102 Cal.App.2d at p. 678; *People* v. *Pope, supra,* 168 Cal.App.2d at p. 668; *People* v. *Gory, supra,* 28 Cal.2d at pp. 456-458; *People* v. *Jurado* (1972) 25 Cal.App.3d 1027, 1030-1031 [102 Cal.Rptr. 498]; *People* v. *Carrasco* (1981) 118 Cal.App.3d 936, 947-949 [173 Cal.Rptr. 688].) Here, the trial court never informed the jury that it had to determine whether Reynolds knew of the plastic's presence. This failure constituted error, because it removed from the jury's consideration an element of the offense charged.

Nor was the error cured by the giving of the general intent instruction. That instruction, while consistent with the knowledge requirement, does not clearly and directly convey that requirement to the jury. Since knowledge is an element of the offense, Reynolds was entitled to a specific instruction thereon. (*People* v. *Patterson, supra,* 102 Cal.App.2d at p. 679; see also, *People* v. *Carrasco, supra,* 118 Cal.App.3d at pp. 947-949 [trial court's failure to sua sponte instruct jurors as to knowledge requirement held prejudicial error].)

In *People* v. *Jurado, supra,* 25 Cal.App.3d at page 1031, the jury was not instructed that knowing possession of a weapon was required for conviction of carrying a concealed weapon. The trial court did, however, tell the jury that "[w]here a person intentionally does that which the law declares to be a crime, he is acting with criminal intent. . . ." The Court of Appeal held that said instruction would indicate to a lay juror that the People had to prove knowing possession of the gun. Therefore, failure to expressly instruct on the knowledge requirement was harmless error *where the evidence gave no rational basis for finding possession without knowledge.*

In *Jurado,* the prosecution's evidence showed that the defendant placed his hand on a gun which was inside his jacket. In the instant case, however,

Reynolds's testimony, if believed, would have clearly supported a finding of absence of knowledge. Even Parent's testimony did not place the piece of plastic in Reynolds's hand. Although the prosecutor argued that no one could have worn the shoe without being aware of the plastic's presence, this was an inference on his part and not something that was established through testimony. Moreover, there was a legitimate question as to whether the shoe in which the plastic was found was the shoe worn by Reynolds. Under these circumstances, *Jurado* would not be applicable even if we were inclined to follow it.[3]

Nor was the instructional error cured by the prosecutor's argument, which followed the giving of instructions.[4] First, this is not a situation in which the jury was instructed on all the elements of the crime but the instructions were ambiguous or potentially confusing. Second, the jury was told that it was the *court's* duty to explain pertinent rules of law and that it was their duty to accept and follow those rules *as stated by the court.* (Cf. CALJIC Nos. 1.00 (1979 rev.) [respective duties of judge and jury]; 1.02 (1979 rev.) ["Statements made by the attorneys during the trial are not evidence. . . ."].) Third, the prosecutor's argument was ambiguous as to the knowledge requirement. On the one hand, he argued that Reynolds had to have known that the plastic was in the shoe, and that all the People had to show was that Reynolds had it and knew it was there. On the other hand, his argument regarding general criminal intent and motive contained no reference to an *intentional* doing of that which the law says is unlawful.

Nothing contained in this opinion should be read as an indication that the evidence was insufficient to support a conviction. To the contrary, there was sufficient evidence to entitle a jury to conclude that the shoe belonged to Reynolds and that he could not but have known of the object's presence.

---

[3] *Jurado* relies in large part on *People* v. *Bowens* (1964) 229 Cal.App.2d 590, 599 [40 Cal.Rptr. 435], a narcotics possession case wherein failure to instruct on knowledge was held to be harmless error. However, the holding in *Bowens* has been called into question by *People* v. *Mayberry, supra,* 15 Cal.3d at page 158, which expressly disapproved *Bowens*'s interpretation of *People* v. *Modesto* (1963) 59 Cal.2d 722 [31 Cal.Rptr. 225, 382 P.2d 33], upon which *Mayberry* relied.

[4] The prosecutor argued in pertinent part that in a general intent crime, "if one does what the law says is unlawful, we do not need to go beyond that and prove" a specific intention to violate the law. He also stated the elements of the crime as "possessing or having underone's [*sic*] control or within one's clothing, et cetera, a sharp object while being a state prisoner. . . . [¶] Now, he [Reynolds] testified to you, that, I didn't know it was there. [¶] And, if you accepted that at face value, then, I guess he's entitled to an acquittal. . . . [¶] Now, you can examine the shoe. . ., I suggest to you that it's inherently incredible that that could be in his shoe without him knowing about it, or that someone could get his shoe from him and put that in there without him knowing about it. . . . [¶] The reasonable interpretation is the defendant knew it was in there, because it's impossible to wear that shoe or have it for any period of time and not being [*sic*] aware that it's in there. . . . [¶] He had it. He knew it was there. That's all that needs to be proven. . . .")

(Cf. *People* v. *Jennings* (1953) 121 Cal.App.2d 120 [262 P.2d 611].) However, the instructional error was prejudicial regardless of the strength of the People's case. (Cf. *People* v. *Mayberry, supra,* 15 Cal.3d at p. 157; *People* v. *Carrasco, supra,* 118 Cal.App.3d at p. 949.) Accordingly, the conviction cannot stand.[5]

The judgment is reversed and the matter is remanded for further proceedings.

---

[5] For guidance of the trial court and the parties, we note the court's instructing the jury in the language of the statute was proper insofar as it went. However, it should have then instructed the jury in language similar to that found in CALJIC No. 12.00 (1979 rev.) [controlled substance—illegal possession], that in addition to proving the accused's confinement in a state prison and that the instrument involved is one prohibited by section 4502, the People must prove that the accused, with knowledge of the object's presence, possessed the object, or carried it on his person, or had it under his custody or control. Although not at issue here, in an appropriate case the court should also include the language from CALJIC No. 12.00 regarding actual, constructive, and joint possession.