Filed 6/29/26  P. v. Williams CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JOCQUETTE MIGUEL WILLIAMS,<br>　　　Defendant and Appellant. | C100453<br><br>(Super. Ct. No. 23FE016052) |

Defendant Jocquette Miguel Williams was charged with corporally injuring his girlfriend and assaulting her with a deadly weapon.  (Pen. Code, §§ 273.5, subd. (a); 245, subd. (a)(1).)  The People also alleged two aggravating circumstances as to both offenses: (1) using a weapon (the weapon circumstance); and (2) serving a prior prison term (the prior prison circumstance).  (Cal. Rules of Court, rule 4.421(a)(2), (3).)

A jury found defendant guilty of both offenses and found the weapon circumstance true as to both offenses.  The trial court denied defendant's request for a jury trial on the prior prison circumstance.  After finding that circumstance true, the court found the low term contrary to the interests of justice, imposed the upper term on the corporal injury count, and imposed and stayed the upper term on the assault with a deadly weapon count.

Defendant contends the trial court prejudicially erred by:  (1) failing to instruct the jury on simple assault; (2) failing to clarify the term "distinctively worse" in the jury

1

instruction on the weapon circumstance; and (3) denying defendant's right to a jury trial on the prior prison circumstance and selecting the upper term based on facts not found true by the jury. We disagree and affirm. Statutory references are to the Penal Code. Rule references are to the California Rules of Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Trial Evidence

#### A. Girlfriend's Testimony

Girlfriend dated defendant on and off for almost five years. On October 6, 2023, she was living in a tent at a campsite and visiting a nearby campsite when defendant contacted her. Defendant then met girlfriend and walked with her back to her campsite.

When they arrived, girlfriend noticed "somebody had obviously made things a mess" because "things were a little bit [disheveled]." Girlfriend later clarified that "[t]here was a lot of damage." She and defendant argued about a burnt hole in the door. Girlfriend asked him why he did it, and "he didn't really give [her] much of an answer and made [her] upset." There was name calling and then she ran away to deflate the situation.

Around noon that day, she went back to the tent and noticed motor oil on the walls. She started cleaning when someone (possibly two people) came in the back of her tent and defendant came in the front. Someone punched her, kicked her, and hit her with a crowbar, but she did not know who. She was covering her head with her arms so she "didn't really see a lot of who was doing what." She ultimately escaped by taking the crowbar and making a hole in the tent. She went to a nearby auto shop. Defendant rode by the shop on his bike, and girlfriend yelled "mean stuff at him, calling him names."

When police arrived, girlfriend gave them the crowbar and told them defendant hit her with it, punched her, and ran after her to the auto shop. She was being honest with the police when she talked to them. The police asked girlfriend to show them the tent

2

damage, but she refused. She was afraid of having police there and opted against pressing vandalism charges.

Photos taken that day showed a bruise on girlfriend's forearm and swollen areas near her left eye and on her forehead. It took about a month for girlfriend to recover from the injuries.

Between the incident and the trial, girlfriend and defendant communicated by phone and email. Girlfriend told defendant she loved him and wanted to have a relationship with him. About a month after the incident, a few people told girlfriend that someone else had attacked her and had been bragging about it. About a month later, she reached out to the prosecution and told them she did not believe defendant committed the assault.

Reflecting back on the incident at trial, girlfriend was "100 percent positive" defendant did not assault her. She explained she got hit really hard, and defendant was there, but he was trying help her and "wasn't the one that was hitting [her]." She had assumed it was him right after the incident because they had just had an argument.

B. Other Evidence

An auto shop employee testified she heard girlfriend yelling for help. Girlfriend was injured, scared, and frantic, and employee could "see … the fear in her eyes." Employee also saw defendant and a gentleman on a bicycle. Defendant chased girlfriend into the auto shop and made threats.

The police officer who reported to the scene testified that girlfriend said defendant had hit her with a crowbar, hit her several times in the head, face, and body with a closed fist, and kicked her in her stomach and sides. When asked if girlfriend mentioned anyone else in the tent, the officer responded, "It was only the two of them." The officer booked the crowbar into evidence but did not know if it had ever been fingerprinted or DNA swabbed.

## II. Jury Instructions

During a break in the evidence, defense counsel stated he did not intend to request instructions on any lesser included offenses. The court noted it was "not really seeing any evidence of any lessers" but allowed counsel to revisit the issue. At the end of the day, counsel noted "[t]he only possible lesser included" he could imagine "would be a 240, simple assault," but he submitted "about whether or not [that was] appropriate." He added he could foresee "a possible situation in which some of the jurors think, well, you know, maybe [defendant] did not hit her with the crowbar but struck her in some other way or somehow engaged in that conduct." The court found a lack of substantial evidence to warrant the instruction, explaining that "the only evidence [it] heard was that [defendant] didn't lay a hand on [girlfriend], and [] was trying to help her, so that would not be a crime."

The court instructed the jury the next day. The instructions included CALCRIM No. 200, CALCRIM No. 840 on inflicting corporal injury, CALCRIM No. 875 on assault with a deadly weapon, and CALCRIM No. 3225 on the weapon circumstance. The CALCRIM No. 200 instruction specifies that words and phrases not specifically defined should be applied using their ordinary meanings.

## III. Deliberations and Verdict

After about two hours of deliberation, the jury communicated it was hung. The court gave further deliberation instructions and ordered the jury to continue. Shortly after resuming deliberations, the jury requested a readback of girlfriend's testimony. The court reporter went to the deliberation room and returned two minutes later, indicating the jury wanted to pinpoint their readback. Six minutes later, the jury asked whether the assault with a deadly weapon verdict could "be based on any deadly weapon or solely the crowbar." The court responded that the only deadly weapon alleged in the case was the crowbar. Ten minutes later, the jury reported that it had reached a verdict. The jury

4

found defendant guilty of both offenses and found the weapon circumstance true as to both.

## IV. *Sentencing*

Defendant requested a jury trial on the prior prison circumstance. The court rejected that request, concluding it was "more than capable" of reviewing the documentary evidence. The court then received a certified report of defendant's criminal record from the Department of Corrections and Rehabilitation showing: (1) a 2008 conviction with a three-year sentence; (2) a 2009 conviction with a two-year sentence; (3) a 2007 conviction with a two-year sentence; and (4) defendant's movement in and out of prison facilities between 2009 and 2015. The report also included defendant's fingerprints and photograph.

Defense counsel argued the report did not show that defendant "actually served the terms in prison." The prosecution countered that the report showed the dates defendant was admitted to prison, transferred to other facilities, paroled, absconded, and returned back to parole. The court found the People had proven the prior prison circumstance beyond a reasonable doubt.

According to the probation report, defendant verbalized experiencing physical abuse from his mother's boyfriend from ages 9 to 11. Defendant also admitted to daily use of methamphetamine, marijuana, alcohol, and ecstasy. As to the current offense, defendant insisted, "It wasn't me. The victim was fighting with someone else, and I showed up to help her, and she switched her story and said it was me." The probation report showed that defendant had been convicted of: (1) corporally injuring a spouse or cohabitant in 2007; (2) assault with a deadly weapon in 2009; (3) burglary in 2014 and 2015; (4) failing to stop at the scene of an accident in 2014; (5) theft and resisting a peace officer in 2019; and (6) controlled substance possession and animal confinement in 2022. The probation department recommended concurrent upper terms of four years for each count.

Defense counsel requested a low-term, 16-month sentence for both counts, served concurrently. Citing defendant's childhood trauma and girlfriend's support, counsel also requested that the court suspend execution of the sentence and allow defendant to complete a two-year residential rehabilitation and job training program.

The prosecution requested the court to follow probation's recommendation. He argued probation was inappropriate, pointing to defendant's "numerous" misdemeanor and felony convictions, and his placement on probation "six different times," most recently in 2022 and 2023. As to the aggravating factors, the prosecution argued defendant had been to prison "some time ago" and had picked up numerous convictions since then. He argued the court should impose the upper term as probation had recommended.

The court considered the probation report, specifically defendant's denial of committing the crime and his criminal history from 2007 to 2022. As to the low term sentence, the court considered section 1170, subdivision (b)(6) and rule 4.420, "looking to see if there are any mandatory low term factors." The court noted the reference in the probation report to defendant's statement that he experienced psychological, physical or childhood trauma, including abuse or neglect. The court also considered factors for the high term, specifically the weapon circumstance and the prior prison circumstance.

The court concluded that the aggravating circumstances outweighed the mitigating circumstances such that imposition of the low term would be contrary to the interest of justice. The court then described the evidence introduced at trial. It noted the following: (1) girlfriend's belongings were doused in a flammable liquid; (2) the hole in the tent was burned, not cut, and it was clear defendant did that; (3) girlfriend was fearful and panicked when she approached the auto shop after being assaulted; (4) it took about a month for girlfriend's bruising and swelling to go down; and (5) this was "an incredibly violent episode" and "conduct that the defendant continues to exhibit" as shown by his criminal history. The court then found defendant ineligible for probation. After noting

6

the weapon circumstance and the prior prison circumstance, the court imposed the upper term of four years for the corporal injury conviction, stating this was not a "double use." The court also imposed the upper term of four years for the assault with a deadly weapon conviction but stayed its execution under section 654.

Defendant timely appeals.

## DISCUSSION

### I.    Simple Assault

Defendant contends the trial court erred by failing to instruct the jury on simple assault as a lesser included of assault with a deadly weapon. He claims the error was prejudicial because the record shows the jury hung on the assault charge and needed clarification on the deadly weapon element. We reject defendant's instructional duty contention, so we need not address his prejudice contention.

A "trial court has an independent obligation to instruct the jury on all lesser included offenses the evidence warrants." (*People v. Hardy* (2018) 5 Cal.5th 56, 98.) But such an instruction is not required " 'when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime.' " (*People v. Campbell* (2020) 51 Cal.App.5th 463, 503.) We review de novo the question of whether a trial court erroneously failed to instruct on a lesser included offense, and we view the evidence in the light most favorable to defendant. (*People v. Nieves* (2021) 11 Cal.5th 404, 463; *People v. Banks* (2023) 97 Cal.App.5th 376, 388.)

Here, defendant contends a reasonable jury could have found he did not personally wield the crowbar but still committed assault. He relies on girlfriend's testimony and the absence of physical evidence tying him to the crowbar. In his view, "the overwhelming theme of [girlfriend's testimony] was that she was not sure if or how [defendant] was involved." In support, he focuses on her statements that there were other people in the tent and that she could not see who was hitting her. We disagree with defendant's characterization of the theme of girlfriend's testimony. On the day of the incident, she

7

told police defendant was *the* attacker. Between then and trial, she changed her mind and was "100 percent positive" defendant did not assault her. Her testimony about the people in the tent and her inability to see who was hitting her was the introduction of her new story that defendant did not hit her at all. That testimony did not provide substantial evidence that defendant attacked her but did not wield the crowbar. And the absence of physical evidence linking defendant to the crowbar provides no substantial evidence of simple assault. (*People v. Superior Court (Valenzuela)* (2021) 73 Cal.App.5th 485, 498 [the " 'absence of evidence is not the equivalent of substantial evidence' "].)

## II. *Distinctively Worse Instruction*

The trial court instructed the jury it could not find the weapon circumstance true unless it found defendant's conduct "distinctively worse than an ordinary commission of the underlying crime." (CALCRIM No. 3225; *People v. Black* (2007) 41 Cal.4th 799, 817.) Defendant contends the trial court needed to provide additional instruction. Specifically, he contends the trial court had a sua sponte duty to instruct the jury on the meaning of the phrase "distinctively worse." We disagree.

According to defendant, the trial court's duty stemmed from two different obligations: (1) the trial court's obligation to instruct on general principles of law; and (2) its obligation to clarify terms that have a technical, legal meaning. But these are not two different obligations. A " 'trial court must instruct on general principles of law that are ... necessary to the jury's understanding of the case.' [Citations.] That obligation comes into play when a ... term 'does not have a plain, unambiguous meaning,' has a 'particular and restricted meaning' [citation], or has a technical meaning peculiar to the law." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012; see *People v. Reynolds* (1988) 205 Cal.App.3d 776, 779.) Defendant's suggestion that there are two different obligations is wrong.

We also disagree with defendant that the term "distinctively worse" has a technical, legal meaning requiring clarification. A term requires clarification only if it

8

"has a definition that *differs* from its nonlegal meaning." (*People v. Estrada* (1995) 11 Cal.4th 568, 574.) A trial court has no sua sponte duty to give amplifying or clarifying instructions where the terms are "commonly understood by those familiar with the English language." (*People v. Kimbrel* (1981) 120 Cal.App.3d 869. 872.) Defendant contends the phrase "distinctively worse" has a technical meaning in two ways.

First, citing *People v. Moreno* (1982) 128 Cal.App.3d 103, he contends the phrase differs from "common parlance because it is based on the specific crime charged, its elements, and its inherent nature." But defendant misapplies *Moreno*. There, the appellate court concluded that the trial court improperly engaged in dual use of facts by using an element of the underlying crime to impose an aggravated term. (*Moreno*, at p. 110.) Defendant imports the sentencing prohibition on dual use of facts into the instruction on aggravating circumstances. We refuse to make that import. It is not the jury's role to determine whether an aggravating factor violates the prohibition against dual use. Rather, it is the trial court's role to avoid dual use of facts when sentencing a defendant. (See rule 4.420 (a) & (h); *People v. Scott* (1994) 9 Cal.4th 331, 350.) In fact, here, the trial court expressly stated it was applying the weapon circumstance to the corporal injury conviction, not the assault with a deadly weapon conviction, to avoid dual use of facts.

Second, defendant contends *Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65 (*Chavez Zepeda*) supplied a technical, legal meaning for the phrase "distinctively worse." Not so. There, the court concluded that the "distinctively worse" standard did not implicate the vagueness concerns raised in *Johnson v. United States* (2015) 576 U.S. 591. (*Chavez Zepeda,* at p. 89.) The court explained that applying the "distinctively worse" standard does not require imagining "an abstract, 'ordinary case' " to determine whether a finding of an aggravating circumstances is warranted. (*Ibid*.) Rather, it requires considering "whether the manner of the crime's commission was distinctively worse 'when compared to other ways in which such a crime could be

9

committed.' " (*Ibid*.) And that consideration was not "beyond any jury's competence." (*Id*. at p. 91.) We disagree that *Chavez Zepeda* supplied a technical, legal meaning for the "distinctively worse" standard. The consideration *Chavez Zepeda* described aligns with a common understanding of the phrase "distinctively worse than an ordinary commission of the underlying crime." (*Id*. at p. 91, fn. 6.) We expect that the jury followed its instruction to apply the ordinary meaning of undefined phrases like this. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 431.)

Defendant also points to *Chavez Zepeda's* expectation that jurors would be "given additional guidance and explanation ... in the meaning of the requirement that the aggravating circumstance makes the commission of the offense distinctively worse." (*Chavez Zepeda*, *supra*, 97 Cal.App.5th at p. 91.) Defendant converts this expectation into a mandate that the phrase "distinctively worse" receive further clarification than provided in CALCRIM No. 3225. We do not interpret such a mandate flowing from *Chavez Zepeda*. An expectation is not a mandate, and *Chavez Zepeda* did not consider CALCRIM No. 3225. In fact, after expressing its expectation, the *Chavez Zepeda* court noted that "[i]ndeed," while the case before it was being briefed, the Judicial Council had developed CALCRIM No. 3225 and other aggravating factor instructions. (*Chavez Zepeda*, at p. 91.) The development of those instructions supported the court's expectation for additional jury guidance and explanation. *Chavez Zepeda* did not hold that the instructions need to be given or need further clarification. (*Id*. at p. 91, fn. 6.)

### III. Sentencing

#### A. Prior Prison Circumstance

We agree with the parties that the trial court erred by denying defendant's request for a jury trial on the prior prison circumstance. But we agree with the People that the error was harmless beyond a reasonable doubt.

"[A] defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a

10

sentence more serious than the statutorily provided midterm." (*People v. Wiley* (2025) 17 Cal.5th 1069, 1086, fn. omitted.) "When a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term sentence, the reviewing court must apply the *Chapman* standard of review." (*Wiley*, at p. 1087.) "Under that standard, 'a sentence imposed under ... section 1170[, subdivision] (b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.' [Citations.] Lack of a jury trial is not harmless under *Chapman* if 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue." (*Wiley*, at p. 1087.)

Here, the trial court erred by denying defendant's request for a jury trial on the prior prison circumstance. Defendant contends we cannot find that error harmless because defense counsel argued that the prosecution's prior conviction evidence did not show any terms were actually served in prison. But defendant does not address the substance of defense counsel's argument until his reply brief. Those reply brief points are not properly before us. Allowing defendant to "wait to argue his substantive points until after the [People] exhaust[] [their] only opportunity to address an issue on appeal" is unfair. (*Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1065, fn. 3.)

Nevertheless, we see no merit in defendant's belated reply points. Evidence of an abstract of judgment and commitment form "supports an inference that the official into whose custody defendant was placed upon imposition of sentence regularly performed his or her duty to convey the defendant to prison." (*People v. Tenner* (1993) 6 Cal.4th 559, 566; see Evid. Code, § 664.) Here, the evidence included three abstract of judgment and commitment forms. Those forms were provided in a certified packet (commonly

11

referred to as a 969b packet) that also included a chronological log of defendant's movement history. (*People v. Moreno* (2011) 192 Cal.App.4th 692, 707.) We reject defendant's contention that the movement log was not sufficiently contextualized. The prosecution did not provide the log in a vacuum: it was provided in the 969b packet that named defendant, included his photograph and fingerprints, and provided a record of his commitments. Defendant bore the burden of rebutting this evidence and the official duty presumption at sentencing, but he did not do so. For these reasons, we conclude beyond a reasonable doubt that a jury would have found that defendant served a prior prison term.

### B. Upper Term

Defendant contends the trial court denied his right to a jury trial by imposing the upper term based on additional facts that were not stipulated to or found true by the jury. We disagree.

As covered, "a defendant is entitled to a jury trial on [nearly] all aggravating facts ... that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*People v. Wiley, supra*, 17 Cal.5th at p. 1086, fn. omitted.) But defendant points to no authority that prohibits a court from relying on aggravating circumstances not found true by the jury when considering whether to impose a lower term sentence under section 1170, subdivision (b)(6). Indeed, authorities are to the contrary. (*People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 928-929 [section 1170, subdivision (b)(6) does not require aggravating circumstances to be stipulated to by the defendant or proven to a jury beyond a reasonable doubt]; accord, *People v. Hilburn* (2023) 93 Cal.App.5th 189, 204.) Here, the trial court considered defendant's request for a low term sentence. The court described the basis for the low term request, identified the high term aggravating factors, and then asked itself whether the aggravating circumstances outweighed the mitigating circumstances such that imposition of the lower term would be contrary to the interest of justice. The court found

that the aggravating circumstances outweighed the mitigation circumstances and then addressed the evidence introduced at trial, noting this was an "incredibly violent episode." We construe this discussion to be limited to the court's low term decision. The statements the court made during that discussion were not findings that needed to be found true by a jury because they informed only the court's low term decision. The court then proceeded to specifically impose the upper term based solely on the aggravating circumstance the jury found true and the circumstance we conclude the jury would have found true. For these reasons, we see no merit in defendant's challenge to the upper term sentence.

## DISPOSITION

The judgment is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
EARL, P. J.

/s/
MAURO, J.