Filed 11/15/13  P. v. Miller CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071779 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F10092) |
| v. | |
| RICHARD MILLER, | |
| Defendant and Appellant. | |

A jury convicted defendant Richard Miller of carjacking (count one), second degree robbery (count two), assault with a firearm (count three), theft of a firearm (count four), and two counts of felon firearm possession (counts five [Smith & Wesson handgun] and six [Beretta handgun]).  (Pen. Code, §§ 215, subd. (a), 211, 245, subd. (a)(2), 487, subd. (d), former 12021(a)(1).)[1]  The jury also found, as sentence

---

[1] Undesignated statutory references are to the Penal Code.

1

enhancements, that defendant personally used a firearm during the commission of counts one through three.  (§§ 12022.53, subd. (b), 1203.06, subd. (a)(1), 12022.5, subd. (a)(1).)

Sentenced to an unstayed term of 16 years four months, defendant appeals.  He contends (1) the evidence is insufficient to support his convictions of carjacking (count one) and felon firearm possession (count six, Beretta); (2) the trial court erred by not instructing on the lesser included offense of simple assault; and (3) the trial court erred in imposing consecutive sentences on the carjacking (count one) and the Smith & Wesson possession (count five).  We disagree and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Carjacking*

On December 9, 2008, Rodrick Davis drove home from work in his Mustang. Davis worked as an armored car driver and his job-required, loaded Smith & Wesson handgun rested on the front passenger seat.  Davis backed into a parking spot at his apartment complex.

While parking, Davis observed a Chevrolet Suburban parked nearby, and also noticed that his Mustang's left headlight appeared out.  When Davis exited the Mustang to check the light, two men suddenly appeared.

One man shouted, "Nice car."  Davis responded, "Thank you."  Then a third man, defendant, approached Davis from behind, went in the Mustang through the driver's side, and reached for the gun.[2]

As Davis pulled defendant out of the vehicle, the men fought over the weapon. Both had their hands on the firearm at one point and a round ejected from the gun's

---

[2] In court, Davis temporarily recanted this portion of events because he was "nervous" about specific audience members.  He then corrected this testimony.

chamber. Defendant gained control over the weapon, and defendant pointed the gun directly at Davis.[3] Davis then body-slammed defendant behind the vehicle. Both men fell to the ground near some bushes.

On the ground, the struggle for the gun continued. Davis landed on top of defendant. Feeling a "sharp object" pressed into his side, Davis rolled off of defendant because he did not want to "get shot." While Davis could not see the object, he thought it was a gun. The two other men approached Davis and defendant at this time. Defendant said to them, "If he move, kill him." Defendant and the other two men then kicked and hit Davis in his back, face, head, and side. During the assault, Davis lay on the ground with his eyes closed and feigned unconsciousness.

After the beating subsided, one man put an object to Davis's head and someone said, "If he moves, blow his head off." Davis also heard someone say, "Well, what should we do with his car?" and "[g]o through his pockets."

With the object still pressed to his head, Davis lay on the ground with his eyes closed when he heard his car start. After a few seconds, the individual holding the object to Davis's head ran off. Davis opened his eyes, stood up, and saw the Suburban drive off in the same direction as the Mustang.

### Events After the Carjacking

After calling 911, Davis grabbed his girlfriend's car keys, got in her car, and drove off in search of his Mustang.

Davis found the Mustang stopped in the driveway of the apartment complex near the garbage dumpster; no one was around it. Shortly after, the Suburban drove up and

---

[3] Davis initially testified at trial that he did not actually see a gun at any point during the struggle, but later corrected his version to state that defendant pointed a gun at Davis's head.

two men jumped out of the Suburban and entered the Mustang. Davis believed that the two men went through his belongings located in the Mustang.

Meanwhile, responding police officer William Hancock drove into the apartment complex and Davis waved him down. Davis described the Suburban and recounted the events of the carjacking, including the taking of his Smith & Wesson handgun. Davis said that a man jumped into his car and grabbed his gun located on the front passenger seat.[4]

After receiving the description, Officer Hancock and other officers found the suspects in the Suburban, and chased them for three to five miles, whereupon the Suburban collided into a fire hydrant. Officers apprehended defendant when he tried to exit the front passenger window of the Suburban.

### Property Located After the Carjacking

At the crash site, officers discovered the Smith & Wesson, Davis's handgun, underneath a passenger seat of the Suburban. Later, Detective Michael Darlington inspected the impounded Suburban and found, in the rear compartment of the center console, a loaded .25-caliber Beretta handgun, a wallet containing $362, an identification card with the name Anthony Miller, and a police citation issued to Anthony Miller. Detective Darlington also found $46—the amount that Davis said was in his wallet that night—on the rear driver's side seat and Davis's wallet in the driver's side floorboard area.

Back at the apartment complex, officers recovered a Ruger handgun adjacent to the bushes where the struggle between Davis and defendant occurred.

---

[4] When Officer Hancock spoke with Davis 15 minutes later, Davis also stated that defendant pointed the gun at Davis's head at one point during their altercation.

4

## DISCUSSION

## I.  Sufficiency of the Evidence

Defendant contends the evidence is insufficient to sustain the convictions for carjacking and one of the felon firearm possession counts (count six, Beretta handgun). Defendant challenges the carjacking conviction, claiming the evidence is insufficient that he formed the requisite intent to take the Mustang before or during the use of force or fear.  Defendant challenges the firearm conviction of count six, claiming the evidence is insufficient that he "possessed" the Beretta handgun.  Discussing these two arguments in turn, we disagree.

In reviewing the sufficiency of the evidence, we "review[] the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.)  This standard of review is not altered where the People rely primarily on circumstantial evidence.  (*People v. Bloyd* (1987) 43 Cal.3d 333, 346-347.)

### A.  *Sufficiency of the Evidence—Carjacking*

Carjacking is defined, as pertinent here, as the "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence . . . against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)  The requisite intent must be formed before or during the use of force or fear.  (*People v. Gomez* (2011) 192 Cal.App.4th 609, 618, 622.) Defendant contends the evidence is insufficient that he had the requisite intent before or at the time he applied force against Davis.

Having just expounded the evidence, it is unnecessary to recite it again here. Rather, we are satisfied that a reasonable trier of fact could have found beyond a

5

reasonable doubt that defendant formed the intent to permanently or temporarily deprive Davis of his Mustang before or during the use of force or fear. "Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense." (*People v. Pre* (2004) 117 Cal.App.4th 413, 420.)

The evidence included the statement "nice car," which occurred just before the men and defendant assaulted Davis. A reasonable juror could have found that defendant formed the intent to deprive Davis of the Mustang at that moment. Or, a reasonable juror could have found that defendant formed the requisite intent when approaching Davis from behind, creating the inference that defendant was about to knowingly engage in malicious or illegal behavior. Or, a reasonable juror could have found that defendant formed the requisite intent while assaulting Davis, as demonstrated by the discussion about what to do with the Mustang. Accordingly, we conclude the jury could readily infer from the entire sequence of events that defendant intended to deprive Davis of the possession of his car before or during the use of force or fear—the assault.

Defendant's contention that he merely formed the intent to deprive Davis of his smaller, personal possessions, and not his car, is without merit. While this is a possible inference, this is not what the jury reasonably concluded. Defendant simply asks us to reweigh the evidence. That we cannot do. Viewing the evidence in the light most favorable to the judgment, we find there is sufficient evidence that defendant committed carjacking.

## B. Sufficiency of Evidence—Felon Firearm Possession

Defendant next claims there is insufficient evidence that he "possessed" the Beretta handgun (count six). We disagree.

The applicable statute, former section 12021, subdivision (a)(1), provides, "Any person who has been convicted of a felony . . . and who . . . has in his or her possession or

under his or her custody or control any firearm is guilty of a felony." Defendant and the People stipulated that defendant was previously convicted of a felony.

Possession need not be actual or exclusive. (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622.) "A defendant possesses a weapon when it is under his dominion and control." (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1083.) "[P]ossession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." (*People v. Newman* (1971) 5 Cal.3d 48, 52.) The elements of possession may be established by "circumstantial evidence and any reasonable inferences drawn from such evidence." (*People v. Harrington* (1970) 2 Cal.3d 991, 998.)

The evidence shows that the Beretta was in the rear compartment of the Suburban's center console. An identification card and a citation, both with defendant's surname, "Miller," were also located in this center console (in a wallet). Defendant sat in the front passenger seat of the Suburban. A reasonable trier of fact could conclude that defendant placed his possessions, the Beretta and the wallet, in the console because it was within his immediate reach. Such evidence "establish[es] a chain of circumstances from which defendant's knowledge and actual or constructive possession or control of the firearm could be readily inferred supporting a finding of guilt." (*People v. Cordova* (1979) 97 Cal.App.3d 665, 670.)

Defendant's argument that the record lacks "any fact" to establish possession is overstated. Such facts—the wallet, identification card, citation, and access to the gun—were considered by the jury, and in conducting sufficiency of the evidence review, we are guided by the rule that "it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." (*People v. Bean* (1988) 46 Cal.3d 919, 933.)

7

Defendant's reliance on *In re Anthony J.* (2004) 117 Cal.App.4th 718 is misplaced. In *Anthony J.*, the court found insufficient evidence to sustain a conviction of possession of a stolen vehicle. (*Id.* at p. 728.) The court applied the familiar rule that possession of *stolen* property requires "something more" than mere presence or access, but that "something more" may be rather slight. (*People v. Land* (1994) 30 Cal.App.4th 220, 224.) Here, defendant is not charged with possessing a *stolen* Beretta; defendant is charged with possessing a firearm as a convicted felon. Even if this standard were appropriate, the evidence previously discussed shows "something more" than mere presence or access.

There is sufficient evidence that defendant exercised control over, and therefore possessed, the Beretta handgun.

## II. Lesser Included Offense Instruction

Defendant argues the trial court erred when it failed to instruct the jury, on its own initiative, on simple assault as a lesser included offense of assault with a firearm. We find no error.

Defendant correctly states the general rule for sua sponte instruction on a lesser included offense: A trial court has a sua sponte duty to give instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155.) But, this rule is limited. "[T]he existence of '*any* evidence, no matter how weak,' " does not compel the giving of a lesser included offense instruction. (*Id.* at p. 162.) A lesser included offense instruction is warranted only if substantial evidence exists from which a reasonable jury could conclude " 'that the lesser offense, but not the greater, was committed.' " (*People v. Avila* (2009) 46 Cal.4th 680, 705, quoting *People v. Cruz* (2008) 44 Cal.4th 636, 664.)

8

Simple assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) The People concede that simple assault is a lesser included offense of assault with a firearm. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747.)

The evidence in this case was insufficient for the jury to have concluded that defendant committed the lesser, but not the greater, offense. The victim, Davis, testified he felt a sharp, heavy object pressed against his side and head at various times in the assault. Davis further testified there was a gun in the Mustang's front passenger seat, he and defendant fought over it, defendant pointed it at him, and Davis then felt an object pressed against his side. Davis also heard one of the three men say, "[B]low his head off," implying that defendant wielded some type of firearm.[5] Thus, the evidence shows a physical altercation between defendant and Davis, throughout which defendant was armed.

The trial court did not err by failing to instruct sua sponte on simple assault, because the evidence was insufficient to support a finding of simple assault rather than assault with a firearm.

### III. Consecutive Sentencing

Defendant claims the trial court erred in imposing sentence on *both* counts one (carjacking—Mustang) and five (felon firearm possession—Davis's Smith & Wesson handgun). The trial court found that the two counts were "committed at different times at separate places rather than being committed so close in time and place as to indicate a . . . single period of aberrant behavior." It is unclear whether defendant is arguing that there

---

[5] Detective Darlington also discovered another firearm, the Ruger, in the bushes adjacent to where the struggle between defendant and Davis occurred. This raises the reasonable inference that defendant used this firearm while assaulting Davis.

is insufficient evidence of separate intent and objective pursuant to section 654, or that the trial court abused its discretion for consecutive sentencing.[6] Both claims are dispelled based on the same reasoning.

Section 654 proscribes multiple punishments for offenses arising out of "a course of conduct which violate[s] more than one statute but nevertheless constitute[s] an indivisible transaction." (*People v. Perez* (1979) 23 Cal.3d 545, 551; *People v. Britt* (2004) 32 Cal.4th 944, 951-952; *Neal v. State of California* (1960) 55 Cal.2d 11, 19.)

In *Bradford*, *supra*, 17 Cal.3d at page 22, the Supreme Court aptly reasoned for purposes here that, " 'where the evidence shows [an illegal firearm] possession distinctly *antecedent and separate* from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows [an illegal firearm] possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense.' " (Italics added.)

When applying section 654, the threshold inquiry is whether the defendant had separate objectives and intents concerning his multiple offenses. (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1408.) "Further, the question whether the defendant held

---

[6] "It is well established that a trial court has discretion to determine whether several sentences are to run concurrently or consecutively. [Citations.] In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal." (*People v. Bradford* (1976) 17 Cal.3d 8, 20.)

California Rules of Court, rule 4.425 provides, as relevant, "Criteria affecting the decision to impose consecutive rather than concurrent sentences include: [¶] (a) Facts relating to the crimes, including whether or not: [¶] . . . [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. [¶] (b) Any circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences . . . ."

multiple criminal objectives is one of fact for the trial court, and its finding will be upheld on appeal if there is any substantial evidence to support it." (*Ibid.*)

Numerous cases have addressed the application of section 654 where a defendant is convicted of both illegally possessing a weapon and using it to carry out an offense. (See *Bradford*, *supra*, 17 Cal.3d at pp. 13, 22-23 [an indivisible transaction occurred when the defendant obtained an officer's gun and then shot him]; *People v. Jurado* (1972) 25 Cal.App.3d 1027, 1033-1034 [when there was no evidence that the defendant possessed a gun before or after a burglary, he could not be punished for multiple offenses]; *People v. Venegas* (1970) 10 Cal.App.3d 814, 821 [an indivisible transaction occurred when the defendant obtained a gun during a struggle immediately before the shooting].)

This case is distinguishable from *Bradford*, *Jurado,* and *Venegas.* Here, there is substantial evidence that defendant possessed Davis's Smith & Wesson handgun before and after the carjacking. A reasonable fact finder could conclude that defendant had two separate objectives: to possess Davis's gun, and to possess Davis's Mustang. The carjacking did not occur immediately after defendant obtained possession of the firearm. Rather, defendant and his associates assaulted the victim in the interim. The events were not a *single period of aberrant behavior.*

The record supports the trial court's conclusion that counts one and five occurred at different times and places. The carjacking of the Mustang (count one) occurred at the apartment complex, but the Smith & Wesson possession (count five) continued after that, because detectives discovered the Smith & Wesson in the Suburban three to five miles from the scene of the carjacking. It is also worth noting that at this point, the Mustang had been abandoned, yet defendant maintained possession of the firearm. The possession of the Smith & Wesson firearm and the carjacking were therefore separate events.

11

Defendant cites the prosecutor's closing argument as evidence of one continuous event.[7] But, statements made in closing argument are not evidence. (See § 1093, subd. (e).) Defendant cites no other evidence to support this theory. Viewed in the light most favorable to the judgment, there is substantial evidence to support consecutive sentencing of counts one and five.

## DISPOSITION

The judgment is affirmed.

          BUTZ       , J.

We concur:

     BLEASE    , Acting P. J.

     NICHOLSON  , J.

---

[7] "[Carjacking is not] finished or concluded until the perpetrators have actually reached a temporary place of safety. So when did the carjacking . . . end? It ended when they were handcuffed. Okay?"