[Crim. No. 6640.   First Dist., Div. Two.   Oct. 17, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. IVAN C. STEELY, Defendant and Appellant.

Robert H. Frank, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant appeals following jury conviction of possession of a sharp instrument while confined in the state prison at Soledad. (Pen. Code, § 4502.)

A fellow inmate, Rudolph Hardy, testified that on April 9, 1967, he was in the "chow hall" at breakfast time; that he noticed appellant, whom he had never seen before, staring at him; that he asked him if he had a "problem" and appellant replied, " 'Yes, you.' . . . 'Meet me behind the yard shack' "; that after finishing breakfast, he went out behind the yard shack and found appellant waiting there with his hands inside his jacket; that the top two buttons of the jacket were buttoned but the lower two were unbuttoned; that he saw the top part of what appeared to him to be a "shank" (knife) protruding above appellant's trousers; that he started talking to appellant, asking him why he wanted to fight, to which appellant replied, " 'I don't play games.' "; that he, Hardy, then picked up a stick in a flower bed for protection; that about then he noticed that the guard in the gun tower had picked up his rifle and was looking in their direction; that he also observed a correctional officer approaching them; that he threw away the stick and told appellant that he had "better get rid of it" (the knife); that at no time did appellant stoop down and pick up anything.

Correctional Officer Allen testified that on the occasion in question he was on duty and noticed a group of inmates looking just beyond the yard shack; that he went over to check on what was happening; that he found appellant and inmate Hardy behind the shack, facing each other; that Hardy was holding a stick and appellant's hand was inside his jacket; that as he approached them, Hardy dropped his stick and appellant removed his hand from underneath his jacket; that he concentrated his attention on appellant because Hardy had backed away and had thrown away the stick; that when appellant walked into the area which was in full view of the gun tower, he, Allen, searched appellant; that he found an ice pick type of weapon, approximately 10 inches long, stuffed in appellant's trousers behind his belt; that when he brought out the weapon from appellant's clothing and held it in front of him, appellant said nothing; that he, Allen, had appellant in full view during the entire sequence of events which he testified to and at no time did he see appellant reach down and pick up anything, nor was he handed anything by appellant; that he had to search appellant in order to obtain the weapon.

Appellant testified that he went out behind the yard shack and waited there for Hardy in response to the latter's request; that upon arrival Hardy picked up a stick from a flower bed; that some words passed between them; that Hardy then warned, " 'Here comes Mr. Allen,' " and threw his stick away; that as he, appellant, started to walk away, he noticed the "shank" lying on the ground; that he "picked it up, decided the best thing to do would be to turn it in to Officer Allen"; that he did not know how the "shank" got to the place where he found it; that he held the object in his hand when he approached Officer Allen and handed it to him.

The defense called inmate Louder, who testified that he saw appellant and Hardy facing each other; that when someone shouted a warning of Officer Allen's approach, Hardy threw away his stick and appellant turned and picked up something; that the object appeared to be a "shank"; that he saw appellant being searched by Officer Allen but did not see him remove anything from appellant's person.

▮▮▮ That portion of Penal Code section 4502 relevant to the evidence herein provides that "Every person confined in a state prison [who] . . . possesses or carries upon his person [a] . . . sharp instrument" is guilty of a criminal offense.

Proof of knowing possession of such an instrument by a state prison inmate is sufficient for conviction. The prosecution is not required to prove the intent or purpose for which the instrument is so possessed. (2 Witkin, Cal. Crimes (1963) p. 730; *People* v. *Wells,* 68 Cal.App.2d 476, 482 [156 P.2d 979]; *People* v. *Marcus,* 120 Cal.App.2d 347, 348 [260 P.2d 1051]; *People* v. *Marcus,* 133 Cal.App.2d 579, 581 [284 P.2d 848].)

### Lack of Guilty Intent

Appellant's principal contention on appeal appears to be as follows: assuming the truth of his version of the facts, i.e., that he had not been carrying the knife on his person but only picked it up for the purpose of handing it to Officer Allen, his lack of "guilty intent" was a good defense to a charge of violating section 4502.

Therefore, appellant argues that the trial court on its own motion should have given an instruction to the jury to this effect, even though he did not propose or request one on such a theory of defense. We do not agree. Such an instruction would have been an incorrect statement of the law.

▮▮▮ "Although criminal statutes are not often construed to impose sanctions in the absence of *mens rea* or guilty

intent, an exception occurs where the statute is an expression of a legislative policy to be served by strict liability. [Citations.] ■ Section 4502 of the Penal Code serves an objective demanding relative inflexibility and relatively strict liability. Its objective is protection of inmates and prison officials against assaults by armed prisoners. [Citations.] It is one of the 'stringent statutes governing prison safety.' [Citation.] . . . Thus a group of California decisions place section 4502 among the statutes whose violation does not depend upon proof of guilty intent, holding that its prohibition is absolute; . . . [Citations.]'' (*People* v. *Wells* (1968) 261 Cal. App.2d 468, 478-479 [68 Cal.Rptr. 400]; hearing denied by Supreme Court.)

*Wells, supra,* notes that some cases, although accepting strict liability as the general rule, ''suggest by dicta the possibility of two extremely narrow exceptions: one, that the accused was in immediate danger when he armed himself and without opportunity to seek the protection of prison authorities, or second, that his possession was authorized for the performance of prison duties such as kitchen or shop work.'' (261 Cal.App.2d, at p. 479.)

Neither situation is present here. With respect to the first suggested exception, inmate Hardy had thrown away the stick and Officer Allen was approaching. Appellant does not contend that he was in any immediate danger.

The factual situation here is quite similar to that in *People* v. *Purta* (1968) 259 Cal.App.2d 71 [66 Cal.Rptr. 38]. (Hearing denied by Supreme Court.) There, too, a Soledad inmate appealed following conviction of possession of a sharp instrument.

On the day in question, one of the officers saw defendant sitting at a card table with another inmate, one Winkler. The officer demanded that defendant submit to a search. After starting to resist, defendant pulled a sharp instrument out of his pocket and handed it to the officer.

At the trial defendant's attorney made the following offer of proof: ''On October 26 two inmates attempted to get defendant to commit sodomy, and one threatened him with a razor. They beat him up. Defendant told these facts to a lieutenant and asked to be put into protective custody. On the date of the instant offense, four or five inmates jumped defendant and then, while he was running away, threw the weapon at him. He picked it up and was going to bring it to

the lieutenant, but got sidetracked talking to Winkler and was thus discovered with the weapon in his possession.''

The court refused to admit the foregoing testimony, stating: ''In the present case, the excluded testimony does not show that defendant was in imminent danger of assault when he picked up and retained the instrument (see *People* v. *Otis,* 174 Cal.App.2d 119, 125 [344 P.2d 342]), nor is there any showing or contention that the instrument was being used in the course of defendant's prison duties. There was no need for defendant to pick up the instrument since he could have informed the prison authorities of its presence. To permit the defense that an inmate was in possession of a proscribed instrument on the basis that it was being delivered to the prison authorities would open the door to fabricated defenses and would in essence defeat the purpose of the statute. Accordingly, we conclude that the trial court acted properly in refusing the proffered testimony.''

### *Constitutionality of Penal Code Section 4502*

■ Appellant next contends that the statute (§ 4502) is unconstitutionally vague and uncertain with respect to the conduct that it prohibits, i.e., whether it includes conduct the purpose of which is ''commendable.''

The argument is based upon the holding in *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451 [83 L.Ed. 888, 59 S.Ct. 618], wherein a New Jersey criminal statute was held to be so vague and uncertain that it was repugnant to the due process clause of the Fourteenth Amendment.

The court therein said, at page 453 [83 L.Ed. at p. 890]: ''No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.''

*Lanzetta, supra,* was distinguished in *People* v. *Smith* (1939) 36 Cal.App.2d Supp. 748, 752 [92 P.2d 1039], as follows: '' [T]here the word 'gang', used without definition, was the governing word of a statute prescribing punishment for gangsters, and the court held the statute void because this word had a great variety of meanings, some of which pointed to conduct of an entirely innocent nature.''

Appellant apparently contends that the statute herein (§ 4502) should have made it clear whether or not an inmate acting with a ''commendable'' purpose was or was not included within its application.

The statute needs no such amplification. It expressly states that it applies to "*Every* person confined in a state prison . . . who . . . possesses or carries upon his person or has under his custody or control [proscribed weapons listed]. . . ." (Italics added.)

Thus, contrary to the statute in *Lanzetta, supra,* appellant *was* "informed as to what the State commands or forbids." (306 U.S., at p. 453 [83 L.Ed. at p. 890].)

Other attacks on the constitutionality of section 4502 are: *People* v. *Wells, supra,* 68 Cal.App.2d 476, 480-481; *People* v. *Crenshaw,* 74 Cal.App.2d 26, 27-28 [167 P.2d 781]; *People* v. *Harris,* 98 Cal.App.2d 662, 666 [220 P.2d 812]; *People* v. *Morales,* 252 Cal.App.2d 537, 539-542 [60 Cal.Rptr. 671]. All such attacks were unsuccessful.

### *Is Soledad a State Prison?*

This point is made for the first time on appeal and appellant's argument is based upon the holding in *People* v. *Romo* (Nov. 1967) 256 Cal.App.2d 589 [64 Cal.Rptr. 151] that sections 4501 and 4502 of the Penal Code do not apply to Youth Authority wards confined in Deuel Vocational Institution. (P. 595.)

The reasoning of the majority opinion in *Romo, supra,* was that the Legislature intended to classify Deuel as a state "institution," as distinguished from a state "prison," and therefore "abstained from calling the institution a prison." (P. 592.)

The legislation establishing Deuel was enacted in 1945 (Stats. 1945, ch. 1454, § 1). The legislation establishing Soledad was enacted in the same year. (Stats. 1945, ch. 75, § 1.) The Deuel statute comprises sections 2035-2042 of the Penal Code. The Soledad statute comprises sections 2045-2045.6 of the Penal Code.

Section 2035 provides in relevant part: "There is hereby established an *institution* for the confinement of males. . . ." (Italics added.)

On the other hand, section 2045 provides: "The Director of Corrections with the approval of the Board of Corrections, is authorized to establish a *State prison* for the confinement of males under the custody of the Director of Corrections."[1] (Italics added.)

---

[1] No contention is made that Penal Code sections 2045-2045.6 do not apply to Soledad Prison. The heading of these sections, under the 1945 act, was "Medium Security Prison"; the heading was amended in 1949 to read "Medium Security Prison at Soledad." (Stats. 1949, ch. 892,

■ We are satisfied that the correctional facility at Soledad is a "state prison" within the meaning of Penal Code section 4502.

This statute contains no classification or differentiation of the inmates therein. It provides in relevant part: "Every person confined in a state prison . . . who . . . possesses or carries upon his person . . . any . . . sharp instrument . . . is guilty of a felony. . . ."

■ As stated in *In re Smith* (1966) 64 Cal.2d 437, 439-440 [50 Cal.Rptr. 460, 412 P.2d 804], which also involved a Youth Authority commitment: "[T]he purpose of section 4501 of the Penal Code is to promote prison safety by discouraging assaults by prison inmates [citation], and to except any inmates from its operation would lessen its effectiveness and to some extent defeat its objective."

The court points out that section 4502 is a "companion provision" subject to the same construction as section 4501.

### Prison Rules

Appellant speaks of certain prison rules from which he argues that it could "reasonably be supposed" that an inmate should, as a matter of good conduct, turn in to the authorities any "contraband" found by him. These rules were never mentioned during the trial and are not included in the record. Moreover, they do not refer to or have any application to deadly weapons.

### Misconduct of Prosecutor

■ Finally, appellant claims misconduct by the prosecutor in his argument to the jury, when he spoke of the testimony of the witness Louder, as follows:

"So now he wants you to believe inmate Louder, see, believe inmate Louder, inmate Louder is such a good guy, such a good guy that he is now in O Wing, the maximum security section of Soledad State Prison. That's what a good guy Louder is. He's in the maximum security cells in Soledad State Prison."

The foregoing facts were brought out by Louder's testimony, to which no objection was made. Nor was any objection made to the now complained of comments of the prosecutor in

§ 1.) It was again amended in 1959 to read, "Correctional Training Facility." (Stats. 1959, ch. 936, § 1.)

his argument. The claimed error must now be deemed to have been waived. (Witkin, Cal. Criminal Procedure (1963) § 748.)

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied November 15, 1968, and appellant's petition for a hearing by the Supreme Court was denied December 11, 1968.