Filed 12/19/13  P. v. Mendoza CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ANTHONY M. MENDOZA,<br><br>  Defendant and Appellant. | F064729<br><br>(Super. Ct. No. MF009906A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

David H. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Anthony M. Mendoza was convicted by jury of two counts of manufacturing or attempting to manufacture a sharp instrument while in prison (Pen.

Code,[1] § 4502, subd. (b)).  In addition, the jury found true an allegation that he had suffered a prior serious or violent felony within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(i)).  The trial court sentenced defendant to a total term of seven years four months.

On appeal, defendant contends (1) section 4502, subdivision (b) is unconstitutionally vague and overbroad, (2) the trial court's instructions regarding the elements of that offense were confusing and deceptive; (3) the trial court erred in failing to instruct the jury on the elements of attempt; (4) the trial court erred in instructing the jury with the specific intent instruction instead of the general intent instruction; (5) the trial court erred in denying a motion to strike gang testimony; and (6) he was improperly convicted of two counts of manufacturing a sharp instrument.  We agree defendant could only be convicted of one count of manufacturing a sharp instrument, therefore we will reverse the second count.  We find the remaining arguments without merit and otherwise affirm the judgment.

## FACTS

Defendant was an inmate housed in the Segregated Housing Unit (SHU) at the California Correctional Institute (CCI) at Tehachapi in May of 2011.  The SHU is a maximum security area, and inmates housed there are closely watched and are always in full restraints.

On May 5, 2011, correctional officer Richard Litton conducted a cell search of the cell shared by defendant and another inmate.  During that search, Litton discovered two items of contraband.  The items were approximately two and a quarter inches long, and about one-eighth of an inch wide, and both were sharpened to a point on one end.  It appeared the items had been made from the metal arm of an eyeglass frame.  One of the objects was found in a shelving unit, inside of a small paper cup near items belonging to defendant.  The other was found embedded in the window caulking near the bunk

---

[1]All further references are to the Penal Code unless otherwise indicated.

2.

occupied by defendant.  The items appeared to have been sharpened by rubbing them against something.  Both items were in plain view within the cell.

According to the policy within the SHU, anything altered from its original state is considered contraband, and anything sharpened to a point is considered a weapon.  As such, both items were confiscated by Litton.

Correctional Sergeant Shawn Bronson testified that Litton showed him the confiscated objects and he concurred they were both sharpened to a point.  Bronson asked defendant about the objects and defendant stated they were his sewing needles.  According to Bronson sewing needles are prohibited in the SHU, and possession of such items would subject an inmate to disciplinary action.

Correctional Lieutenant Joshua Tyree testified as an expert regarding prison-made weapons.  He has over 13 years of experience as a correctional officer and is a member of both the institutional gangs investigation unit and the Investigative Services Unit at CCI.  The two units often work cooperatively.  Tyree teaches classes regarding prison contraband and is tasked with determining if weapons can be made out of items issued in the prison.  He has personally made weapons out of ordinary items inmates possess or have access to, such as snack chip or ramen noodle bags, milk cartons, toothbrushes, and many other items.  He also speaks to inmates regarding weapons in the prison and learns how inmates are making them.

In the SHU weapons tend to be smaller as inmates do not have access to larger items to make weapons and they are also easier to conceal on their person.  Tyree viewed the items at issue in this case and opined they were the beginnings of a weapon.  They were not yet completed weapons because they would need some sort of handle before they could act as a puncturing or stabbing device.  A handle could be made quickly out of common items such as plastic, cloth, or other items SHU inmates possessed.  Both objects were sharpened to a point and the metal they were made from was strong.  The objects could also be used as blow darts or projectiles if shot with a piece of elastic.

3.

Tyree opined the objects were capable of inflicting serious injury as they could be used to stab a person and had the ability to cause major internal bleeding if they struck an artery.

Tyree did not believe the objects were sewing needles as neither one contained an eyelet to attach thread. Tyree had confiscated sewing needles before, the majority of which were made from paper clips. These items were larger and appeared to be made from the metal arm of a pair of eyeglasses. The metal was strong and would take considerable effort to bend. Tyree noted there was a groove in the metal of one object, but it appeared to have been manufactured as part of the eyeglasses. Tyree conceded it would be possible to add an eyelet to the items.

Defendant testified in his own defense. He is currently an inmate at CCI and is serving a "long sentence" for attempted murder as well as spousal abuse. He acknowledged the items in question belonged to him and he had made them from the arm of a pair of eyeglasses. Defendant opined the metal was aluminum and was very easy to break. He was in the process of making the objects into sewing needles. He had previously made two other sewing needles and given them to another inmate. Defendant needed two pieces of metal, one to make the needle, and the other to make the eyelet in the first object. He made the objects by breaking the metal and grinding them down to points. He had also put a groove in the metal to make it easier to make the eyelet. Once he finished the sewing needle, he was going to make another needle out of the eyelet tool.

Defendant claimed he needed the needles to alter his clothing and to make a beanie out of socks and pants out of sheets. He acknowledged he was not allowed to have a sewing needle in the SHU, nor was he allowed to alter his clothing. Once the correctional officers observed him wearing any clothing he made or altered, it would be confiscated.

## DISCUSSION

### I. Section 4502 Is Constitutional

Defendant argues section 4502 is unconstitutionally vague and overbroad as the statute fails to define the term "sharp instrument." We disagree.

4.

Section 4502, subdivision (b) provides in pertinent part: "Every person who, while at or confined in any penal institution … manufactures or attempts to manufacture any instrument or weapon of the kind commonly known as a … sharp instrument … is guilty of a felony …."

"'[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' [Citations.]" (*People v. Rodriquez* (1975) 50 Cal.App.3d 389, 398.) Thus, criminal statutes must be reasonably definite, both in providing a standard of conduct for persons subject to the statute, and in providing guidelines for law enforcement agencies and personnel. (*People v. Custodio* (1999) 73 Cal.App.4th 807, 811 (*Custodio*).) "The requisite certainty may be supplied by reference to either long established usage [citations], or legislative purpose [citation]." (*People v. Rodriquez, supra*, at p. 398.) "Use of a generic term does not, ipso facto, make a statute vague. [Citation.]" (*Id.* at p. 399.) With regard to section 4502 specifically, "[t]he Legislature was not required to list every type of sharp instrument in the statutory prohibition. All that is required is that the crime must be clearly defined so that any reasonable person will know what constitutes a violation." (*People v. Harris* (1950) 98 Cal.App.2d 662, 666.)

We note defendant's entire argument regarding vagueness and overbreadth centers upon the premise he was convicted of *possession* of a sharp instrument in a penal institution. However, defendant was not charged with, or convicted of, *possessing* a sharp instrument; rather he was convicted of *manufacturing* or attempting to manufacture a sharp instrument. To the extent his arguments are applicable to the section he was convicted of violating, we will address those claims only.

Defendant initially argues the lack of a definition of the term "sharp instrument" makes the statute unconstitutionally vague as "the statute leaves to the prosecution, the judge and the jury the impossible task of determining what objects are to be included within its scope." Similar challenges to the statute have been repeatedly rejected over the

last 60 years. (*People v. Crenshaw* (1946) 74 Cal.App.2d 26; *People v. Harris*, *supra*, 98 Cal.App.2d 662; *People v. Morales* (1967) 252 Cal.App.2d 537; *Custodio*, *supra*, 73 Cal.App.4th 807.)

In *Custodio*, the defendant challenged the constitutionality of section 4502, subdivision (a) prohibiting the possession of a sharp instrument. Like defendant, Custodio argued the term "sharp instrument" was vague on its face as well as applied to him. He claimed the term could be interpreted to apply to the possession of a sharpened pencil in an inmate's cell. In upholding the constitutionality of the section, the court explained the purpose of the statute was to protect inmates and correctional staff from assaults by armed prisoners. (*Custodio*, *supra*, 73 Cal.App.4th at p. 812.) Indeed, the statute was "adopted on the justifiable theory that there is greater danger of imprisoned felons becoming incorrigible and resorting to violence if they are permitted to carry upon their persons deadly weapons." (*People v. Wells* (1945) 68 Cal.App.2d 476, 481 (*Wells I*).) As such, the statute demands "relative inflexibility and relatively strict liability." (*People v. Wells* (1968) 261 Cal.App.2d 468, 478 (*Wells II*) disapproved on other grounds in *People v. Barnum* (2003) 29 Cal.4th 1210.)

In rejecting the contentions section 4502, subdivision (a) was unconstitutionally vague, failed to provide adequate notice as to its terms, and promoted arbitrary and discriminatory enforcement, the *Custodio* court explained the statute "applies to instruments that can be used to inflict injury and that are not necessary for an inmate to have in the inmate's possession." (*Custodio*, *supra*, 73 Cal.App.4th at p. 812.)

> "Thus, viewing the statute 'according to the fair import of [its] terms, with a view to effect its objects and to promote justice' (§ 4), a person of ordinary intelligence would know what is and what is not prohibited by the statute. For example, the person would understand that section 4502, subdivision (a) does not apply to a sharpened pencil—which ordinarily is used for a legitimate and necessary purpose-—unless the inmate uses the pencil as a weapon. [Citation.] Accordingly, the statute is not unconstitutionally vague on its face." (*Custodio*, *supra*, 73 Cal.App.4th at p. 812.)

It is apparent defendant was convicted of manufacturing or attempting to manufacture a sharp instrument not possessing such an object. Although *Custodio* dealt with the possession of a sharp object, its reasoning is equally applicable to the manufacture of a sharp object. The gravamen of defendant's complaint is that the term "sharp instrument" is vague. This was exactly the argument considered and rejected in *Custodio*. We agree with the court's reasoning in *Custodio* and will follow it here.

Defendant attempts to distinguish *Custodio*, arguing it rejected the constitutional challenge of section 4502 in that case based upon the type of item possessed. Not so, *Custodio* plainly rejected a facial attack to the statute, as well as an attack as applied to the facts of that case. (*People v. Custodio*, *supra*, 73 Cal.App.4th at p. 812 ["the statute is not unconstitutionally vague on its face"].) Defendant attempts to distinguish his case from that of *Custodio*, arguing the object there, a "cup pick," which consisted of the "plastic barrel of a ballpoint pen with a piece of metal, like a sewing machine needle sticking out of it," is dissimilar to the object defendant manufactured here. (*Id*. at p. 810.) He points to the court's characterization of the object as being "extremely stiff" and having an overall tapered shape as significantly different from the item here, which was unfinished and, according to the testimony, could be broken by bending the object back and forth a few times. Defendant's argument misses the mark.

The items manufactured by defendant were characterized by Tyree as "strong," and "it would take considerable effort to bend" them. The objects were sharpened to a point and once a handle was affixed, the objects could be used as stabbing weapons capable of causing serious injury. Thus, it appears the objects defendant manufactured were quite similar to the cup pick at issue in *Custodio*.

As applied to defendant, the statute was not unconstitutionally vague and did not fail to give notice of a criminal offense. Defendant admitted manufacturing two metal objects sharpened to a point that he kept in his cell. The evidence established defendant altered the metal arms from a pair of eyeglasses and claimed the objects he was creating were going to be used as sewing needles, which are indisputably sharp instruments.

7.

Defendant acknowledged possession of such objects was prohibited in the SHU and would be confiscated upon discovery. Since defendant knew he was manufacturing the objects, he likewise knew the objects' readily apparent physical attributes as sharp instruments. Based upon the inherent nature of a sewing needle, a person of ordinary intelligence would know it constituted a sharp instrument within the meaning of section 4502, subdivision (b), that the manufacture of these items was unnecessary, and defendant reasonably should have known he could not lawfully manufacture such an instrument.

Extending the argument in *Custodio*, defendant also argues the possession of several commonplace items provided by the prison to the inmates, such as pencils, razor blades, and forks, to name a few, could be punished under the statute contributing to its constitutional defect. We need not address this argument as it is apparent defendant was not charged with possession of such items, rather he was charged with manufacturing a sharp instrument. "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." (*United States v. Mazurie* (1975) 419 U.S. 544, 550; see, e.g., *In re Cregler* (1961) 56 Cal.2d 308, 313; *People v. Hicks* (1963) 222 Cal.App.2d 265, 270.)

Defendant was not charged with the possession of an ordinary item issued by the prison. Rather, he was charged with manufacturing a sharp instrument. Defendant altered metal found within a pair of eyeglasses into small sharpened points. Defendant has not provided this court with any scenario where it would ever be necessary for an inmate to legitimately manufacture a sharp instrument. Thus his attack on the statute fails.

## II. The Jury Instructions Were Not Prejudicial

Defendant makes several arguments related to the jury instructions provided in this case. He argues: (1) CALCRIM No. 2745, which defined the crime of manufacturing a sharp instrument, was prejudicially confusing and deceptive; (2) the trial court's failure to instruct the jury regarding the elements of attempt violated his right to

due process; and (3) the trial court erroneously instructed the jury regarding specific intent. While we agree there were instructional errors, none were prejudicial.

### A. No defense to manufacture a sharp instrument

The jury was instructed with CALCRIM No. 2745 as follows:

"The defendant is charged in Counts 1 and 2 with manufacturing or attempting to manufacture a weapon, specifically a weapon or sharp instrument while in a penal institution in violation of … section 4502.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant was present at or confined in a penal institution;

"2. The defendant manufactured or attempted to manufacture a … sharp instrument;

"3. The defendant knew that he manufactured or attempted to manufacture the … sharp instrument;

"AND

"4. The defendant knew that the object was a … sharp instrument.

"The People do not have to prove that the defendant used or intended to use the object as a weapon.

"You may consider evidence that the object could be used in a harmless way in deciding if the object is a … sharp instrument."

Defendant argues this instruction is "inherently defective and vague" as it "implies that a harmless use is a defense to the crime" but does not instruct the jury how to use the defense. Defendant's argument is premised upon the mistaken assumption that a harmless use is a defense to a violation of section 4502, subdivision (b). However, defendant has provided no authority for the proposition any such defense to the crime exists.

Although few cases have analyzed section 4502, subdivision (b), we find cases interpreting subdivision (a) instructive. Both subdivisions are identical with the exception that subdivision (a) prohibits possession while subdivision (b) prohibits the

9.

manufacture or attempted manufacture of the identical objects. It is apparent, however, both statutes have the same purpose. Thus, we will analyze those cases interpreting section 4502, subdivision (a).

In *Wells II*, *supra*, 261 Cal.App.2d 468, the defendant was found in possession of a knife in violation of section 4502, subdivision (a) and claimed he possessed the knife for purposes of self-defense. The court instructed the jury self-defense was not a defense to the crime charged. In determining self-defense was not a defense to possession of a knife under section 4502, the court observed that although "criminal statutes are not often construed to impose sanctions in the absence of *mens rea* or guilty intent, an exception occurs where the statute is an expression of a legislative policy to be served by strict liability." (*Wells II*, *supra*, at p. 478.) The section "serves an objective demanding relative inflexibility and relatively strict liability. Its objective is protection of inmates and prison officials against assaults by armed prisoners. [Citations.] … Its purpose would be frustrated were prisoners allowed to arm themselves in proclaimed or actual fear of anticipated attack by other inmates." (*Id*. at pp. 478-479.) The court noted cases in dicta have recognized only two narrow defenses to the charge where (1) the defendant was in immediate danger when he took possession of the object and without opportunity to seek the protection of prison officials, or (2) the possession was required for the performance of his prison duties. (*Id*. at p. 479.)

Other cases are in accord. In *People v. Crenshaw*, *supra*, 74 Cal.App.2d 26, the court explained self-defense is not a defense to a violation of section 4502 as self-defense only serves to negate any criminal intent. Because intent is not an element of the crime, self-defense is not a valid defense. (*Crenshaw*, at p. 29.) Likewise, whether the instrument can be used in a harmless manner is not a defense as such evidence would only go to the intent in manufacturing or possessing the item, an inquiry clearly irrelevant under the statute.

Similarly, in *People v. Steely* (1968) 266 Cal.App.2d 591, the trial court refused to instruct the jury it could consider the defendant's intent in possessing a sharp instrument

10.

in determining whether he violated section 4502. The court rejected the argument, relying on *Wells II*, *supra*, 261 Cal.App.2d 468, explaining the crime is one of strict liability, and there are only two possible defenses, neither of which was present there. (*Steely*, *supra*, at p. 595.)

In *People v. Purta* (1968) 259 Cal.App.2d 71, the defendant was charged with possession of a sharp instrument. The defendant sought to testify someone had thrown the object at him and he had picked it up intending to take it to the correctional officer when he was sidetracked and ultimately searched. The trial court ruled the testimony was inadmissible. On appeal, the court affirmed the trial court's ruling. The court explained the purpose of the statute was to prevent all prisoners, without exception, from possessing designated items. The prisoner's intent in possessing the prohibited item was not an element of the offense. (*Id*. at p. 73, citing *Wells I*, *supra*, 68 Cal.App.2d at p. 481.) The court noted the only "proper valid defense is that the prisoner was using or possessing a sharp instrument under circumstances showing that such instrument was required for the performance of his prison duties." (*People v. Purta*, *supra*, at p. 74.) Allowing a defense that the instrument was only possessed to deliver it to prison authorities would "open the door to fabricated defenses and would in essence defeat the purpose of the statute." (*Ibid*.)

Likewise here, permitting a defense that the object had a harmless use would frustrate the purpose of the statute. It would allow every prisoner to claim the item manufactured, even though it fell within the proscription of the statute, had another, harmless, use.

The purpose of section 4502 is to protect inmates and officers from attacks by armed prisoners. This is because the "very existence of the weapons inevitably invites their use on other inmates and correctional officers. That is why our statutes prohibiting such possession by prisoners have always been construed to be absolute, and to permit no defense based on a claim of protection against future attack." (*People v. Velasquez* (1984) 158 Cal.App.3d 418, 422.) This purpose would be frustrated if inmates were

11.

allowed to arm themselves in proclaimed or actual fear of attack by other inmates. Therefore, arming for self-defense is no defense. (*Wells II*, *supra*, 261 Cal.App.2d at pp. 478-479; *People v. Crenshaw*, *supra*, 74 Cal.App.2d at p. 29; *People v. Purta*, *supra*, 259 Cal.App.2d at p. 73; *People v. Steely*, *supra*, 266 Cal.App.2d at pp. 594-595.)

Similarly, the purpose of 4502 subdivision (b) is the same—to protect inmates and guards from armed prisoners. Thus, the Legislature has prohibited in prison not only the possession but also the manufacture of any sharp instrument. This purpose would be frustrated by allowing a defense that the sharp instrument was made for an innocent purpose, such as a sewing needle. Because a sharp instrument may be used as a weapon, it is prohibited. A defendant's claimed harmless use is thus irrelevant.

Despite the above precedents, the pattern jury instruction regarding section 4502 provides that the jury may consider "evidence that the object could be used in a harmless way in deciding if the object is a" specified item within the statute. (CALCRIM No. 2745.) The bench notes for that instruction cite *People v. Savedra* (1993) 15 Cal.App.4th 738 in support of the above language. However, that case addressed a violation of section 4574, not a violation of section 4502. Although the bench notes indicate the language emanates from *Savedra*, it appears the language actually originated from *People v. Rodriquez*, *supra*, 50 Cal.App.3d 389, another case which concerned a violation of 4574. In *Rodriquez*, the defendant was discovered with a razor blade in his possession and was convicted of violating section 4574, which made it unlawful for anyone confined in a jail to possess a deadly weapon. (*Rodriquez*, at p. 395, fn. 4.) Rodriquez argued intended violent use was an element of the prosecution's prima facie case. (*Id.* at p. 394.) The court responded:

> "We turn to whether intended use is an element of proof of 'deadly weapon.' A 'deadly weapon' is one '"… likely to produce death or great bodily injury.'" [Citations.] Certain items are inherently deadly weapons. [Citations.] Most objects, including a razor blade [citation], may or may not be deadly, depending on the factual context. This is so because they also may be used for legitimate purposes. Whether such an item is a deadly

12.

weapon is a question of fact to be determined from surrounding circumstances.  [Citations.]

"Section 4574 proscribes possession, not use, as noted above.  Therefore, the statute is concerned with the potential of the item in question.  Reading the statute as a whole, it is evident the Legislature enacted no halfway measure.  Effective protection of inmates and officers from armed attack depends upon prohibition of possession of *all* deadly weapons in jail.  [Citation.]  This valid legislative objective does not except weapons with dangerous capabilities which also have innocent uses.  Speaking in regard to section 4502, *People v. Wells*, *supra*, 261 Cal.App.2d at pages 478-479 noted the statute '… serves an objective demanding relative inflexibility and relatively strict liability….  It is one of the "stringent statutes governing prison safety." [Citation.]'  The same may be said of section 4574.  It is plain a razor blade's potential for use as a deadly weapon does not depend on an intended violent use.

"Evidence of harmless use by jail inmates, including defendant, *may be relevant if it bears on the likelihood that an item will cause death or serious bodily injury*.  Such evidence is defensive, however.  It is not necessary for the People to prove the item has no harmless use.  Such a construction of section 4574 would effectively nullify its purpose.

"By contending there must be proof of his intended violent use, defendant in effect urges section 4574 creates a specific intent crime.  We reject this contention.  We hold specific intent is not an element of the prima facie case of the violation of section 4574." (*People v. Rodriquez*, *supra*, 50 Cal.App.3d at p. 396, second italics added.)

It is clear from *Rodriquez* that the evidence of a harmless use related only to whether the object could be considered a *deadly weapon* under that section.  A deadly weapon has a specific definition, which includes its likelihood it can cause death or serious injury.  Because of the definition of "deadly weapon," the consideration of the purpose of the object is relevant to determining whether the item is in fact prohibited.

Likewise in *Savedra*, the defendant was charged with possessing a deadly weapon in jail.  (*People v. Savedra*, *supra*, 15 Cal.App.4th at p. 740.)  The jury was instructed that a deadly weapon was "any weapon, instrument or object that is likely to inflict great bodily injury or death." (*Id*. at p. 742.)  The jury was further instructed that "[e]vidence of harmless use may be considered *if* it bears on the likelihood that an item will cause

13.

death or violent injury." (*Ibid.*, italics added.) The court held the instruction was proper and additional instructions regarding other circumstances of the possession were unnecessary. It is apparent from the instructions as a whole, however, that the harmless use was only relevant as to section 4574 due to the definition of a "deadly weapon" as previously explained in *People v. Rodriquez, supra*, 50 Cal.App.3d at page 396.)

The same analysis does not apply to a "sharp instrument" as used here. There is no requirement under the statute or in the case law that a sharp instrument be reasonably capable of inflicting death or serious bodily injury. This is likely because by virtue of being sharp, an instrument has the potential to pierce or cut. Thus, the harmless use inquiry is irrelevant in this context. While a deadly weapon could be blunt, a sharp instrument by definition cannot. (*People v Hayes* (2009) 171 Cal.App.4th 549 [rejecting challenge to instruction defining sharp instrument as "instrument that can be used to inflict injury and that is not necessary for the inmate to have in his possession" because it does not also require the item be "sharp" as the term is commonly used].)

Here, defendant was not charged with manufacturing a "deadly weapon." While the harmless use of an object is relevant in determining whether the object has the reasonable potential of causing death or serious bodily injury, it is irrelevant in determining whether the object is "sharp."

With this understanding in mind, defendant's argument is quickly dispatched. Defendant's argument in essence is the jury may have decided from the instruction that it did not matter whether defendant manufactured the items in question for the innocent purpose of creating sewing needles. This is because although the instruction, as given, implied a harmless use defense existed, it did not provide the jury with any way to acquit defendant if it found the objects were actually sharp. Unfortunately for defendant, the jury would have been correct in concluding the items defendant manufactured were sharp instruments regardless of whether it believed he only intended to use them as sewing needles. Although the instruction is confusing because it implies a harmless use could be a defense to the crime, the confusion is decidedly in defendant's favor as it implies a

14.

defense that does not exist. Thus, the confusion created by the instruction cannot be deemed prejudicial.

**B. Failure to instruct on attempt**

Defendant contends the trial court committed prejudicial error when it failed to instruct the jury regarding the elements of attempt. While we agree the trial court was required to provide the jury with the definition and elements regarding the crime of attempt, we find the error harmless.

In criminal cases, "'"even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case."'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) The duty to instruct, sua sponte, on general principles closely and openly connected with the facts before the court encompasses an obligation to instruct all essential elements of the charged offense where it relates to a material issue presented by the evidence. (See *People v. Banks* (1983) 147 Cal.App.3d 360, 367.) A trial court must instruct sua sponte on a lesser included offense, including attempt, where there is substantial evidence only the lesser and not the greater offense was committed. (*People v. Breverman*, *supra*, at p. 162.)

Under established law, instructional error relieving the prosecution of the burden of proving beyond a reasonable doubt each material element of the charged offense and every material issue presented by substantial evidence violates the defendant's rights under both the United States and California Constitutions. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 277-278; *People v. Flood* (1998) 18 Cal.4th 470, 479-480.)

Under section 4502, subdivision (b), it was a crime for defendant to manufacture or attempt to manufacture a sharp instrument. Much of the trial evidence established that although the object was sharp, it was not complete. Indeed, defendant testified he was in the process of making a sewing needle, and Tyree testified the object defendant had in his

15.

cell was not completed. Thus, there was substantial evidence defendant had attempted to make a sharp instrument. As such, the trial court was required to instruct on the elements of attempt to the extent the final product was incomplete.

Although this type of error is of constitutional dimension, it does not require automatic reversal. In *People v. Flood*, the defendant was prosecuted for attempting to elude a peace officer under Vehicle Code section 2800.3, an element of which is that the driver of the police vehicle is a police officer. The trial court instructed the jury that the persons driving the car were peace officers, thereby taking that issue from the jury. With regard to the claim of federal constitutional error, *Flood* stated:

> "The foregoing United States Supreme Court decisions lead us to conclude that an instructional error that improperly describes or omits an element of an offense, or that raises an improper presumption or directs a finding or a partial verdict upon a particular element, generally is not a structural defect in the trial mechanism that defies harmless error review and automatically requires reversal under the federal Constitution." (*People v. Flood*, *supra*, 18 Cal.4th at pp. 502-503.)

It further stated, "the court's most recent decisions suggest that such an error, like the vast majority of other constitutional errors, falls within the broad category of trial error subject to *Chapman*[*v. California*, (1967) 386 U.S. 18] review." (*People v. Flood*, *supra*, at p. 503.) One specific circumstance in which an error removing an element of the offense from the jury's consideration is harmless is where a defendant concedes or admits that element. (*Id.* at p. 504, citing *Connecticut v. Johnson* (1983) 460 U.S. 73, 87.) Reviewing the error under the *Chapman* standard, we find the error here to be harmless beyond a reasonable doubt.

An attempt to commit a crime requires "a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) All of the evidence regarding the objects at issue indicated defendant intended to manufacture a sharp instrument and took steps to do so. While the evidence regarding the use of the object was disputed, the evidence regarding defendant's actions in making the object and his intent for it to be sharp were conclusively established. Defendant testified he had spent

16.

two days grinding down the metal to a point and giving it a rounded shape in order to transform the metal into a sewing needle. The item had clearly been transformed from its original state as part of an eyeglass frame. That he took steps to manufacture the item were also not in dispute. Both the prosecution and defense conceded the item was unfinished. Defendant explained he was in the process of finishing the item and it would take him two or three more days to complete. In closing argument, the defense conceded the object was sharp and that defendant knew what he was making. This was consistent with defendant's testimony that he was in the process of making a sewing needle. Indeed, defendant admitted the object was already sharp, and his testimony that he had transformed the object into its current state established his direct act in manufacturing a sharp instrument. Defendant's defense was that he was making the needle for the harmless purpose of sewing or altering his clothing. However, the purpose for which he manufactured the object was irrelevant to whether he committed the offense. (See *People v. Steely*, *supra*, 266 Cal.App.2d at p. 595 ["prohibition (of section 4502) is absolute"].) As the issue of defendant's intent to manufacture the object as well as his direct steps in doing so were admitted by defendant, the failure to instruct on the issue was necessarily harmless beyond a reasonable doubt. (See *People v. Flood*, *supra*, 18 Cal.4th at pp. 504-507 [failure to instruct on element of offense may be harmless beyond a reasonable doubt if the evidence is overwhelming, uncontradicted, and conceded by defense].)

Defendant's reliance on *People v. Gallegos* (1974) 39 Cal.App.3d 512 is unpersuasive. There, the defendant was charged with the crime of attempting to escape from prison. The defendant testified he had no intent to escape, rather, he left his cell because an injured officer had been pushed into his cell by other prisoners. (*Id*. at p. 515.) The trial court failed to give an instruction on attempt, omitting the requirement of both the specific intent to commit the crime and the direct act toward its commission. The court found this error was prejudicial because although the appellate court "might be convinced of the existence of that intent; we cannot say as a matter of law it existed; the

17.

question was for the trier of fact." (*Id*. at p. 519.)  Unlike *Gallegos*, the intent to manufacture the item as well as the steps taken to that end were conceded by defendant.

### C.       The specific intent instruction was not prejudicial

The trial court instructed the jury the crimes at issue were specific intent crimes. However, manufacturing a sharp instrument is clearly a general intent crime.  (*People v. Steely*, *supra*, 266 Cal.App.2d at p. 594; *People v. Reynolds* (1988) 205 Cal.App.3d 776, 779-780, overruled on other grounds in *People v. Flood*, *supra*, 18 Cal.4th 470; *People v. Strunk* (1995) 31 Cal.App.4th 265, 272.)  On the other hand, attempted manufacture of a sharp instrument is a specific intent crime.  (*People v. Beck* (2005) 126 Cal.App.4th 518, 521 ["[E]very attempt requires specific intent to commit the target crime, even if the completed crime does not require specific intent"].)  But as we have already explained, the specific intent to manufacture the object was conceded by defendant.  Thus, if the jury rested its decision on the theory defendant attempted to manufacture a sharp instrument, the instruction was not prejudicial.  To the extent defendant argues he was prejudiced by the specific intent instruction as related to the crime of manufacturing a sharp instrument, the error was clearly to his benefit as no specific intent regarding that crime was required.

Pursuant to CALCRIM No. 251, the jury here was instructed it must find a union of mental state and the act.  Although the instruction referred to a specific intent, which would be relayed in the instruction for the crime, the jury was further instructed that in order to find defendant guilty, it must find, among other things, defendant knew he manufactured the sharp instrument and he knew the object was a sharp instrument.  Thus, the jury was required to find defendant in fact had the requisite knowledge before reaching a guilty verdict.  As we have already stated, the issue of defendant's intent to manufacture the object as well as the nature of the object itself was conceded.  Therefore, the error in instructing the jury regarding specific intent rather than general intent was necessarily harmless.  (See *People v. Rodriquez*, *supra*, 50 Cal.App.3d at p. 397.)

18.

In arguing he was prejudiced by the instruction, defendant recounts some of the prosecution's closing argument. But the arguments cited by defendant were proper statements of law as applied to this case. Defendant claims the instructions "allowed the jury to erroneously equate intent with knowledge." The jury was only required, however, to find knowledge of the act and object. To the extent defendant is arguing any prejudice as applied to the theory he attempted manufacture of a sharp instrument, his specific intent to do so was conceded. Indeed, it is difficult to see how one could attempt to manufacture an object without the specific intent to do so. Therefore, the instructional error was clearly harmless under any standard of review.

## III. The Gang Testimony Was Relevant and Not Prejudicial

During trial, Tyree testified as an expert regarding prison-made weapons. He testified he had worked in the institutional gang investigative unit for seven years and was currently a lieutenant in that division. He explained the training he completed to become a correctional officer and also testified as to specific training he had received in the institutional gang investigative unit. Regarding training specific to his duties within the gang unit, he testified he learned about the different gangs, how to identify members, and how gangs affect inmates' lives. As an officer in the institutional gang investigative unit, Tyree was tasked with investigating, identifying, tracking, and monitoring gang members. He helps put validation packets together for gang members and attempts to intercept activity between gang members in the prison and members of street gangs. As Tyree was discussing the relationship between prison gangs and street gangs, defendant objected and moved to strike "all of the talk about gangs," claiming the information was irrelevant. After an off-the-record discussion was held, the trial court sustained the objection but denied the motion to strike. The court then admonished the jury as follows:

> "Ladies and gentlemen, I want to give you an explanation as to the ruling I just made. I am going to instruct you that the testimony you heard from this witness regarding gang activity is to be considered only for the purpose of explaining his background and training and expertise. It is not applicable to the charges in this case or to the defendant as charged in this case."

19.

The prosecutor continued to elicit information regarding Tyree's experience. His unit is cross-trained with the investigative service unit, and the two units often work hand-in-hand and provide useful information to each other's investigations. In the course of his duties, he speaks with gang members, with gang informants, and validates gang members. In addition, some gang members attempt to leave the gangs and subsequently become informants and provide the officers with information regarding criminal activity within the prison, specifically in relation to narcotics, the presence of weapons, and how weapons are manufactured within the prison. This information is valuable because it gives the officers information from the inmate's viewpoint that they are unable to get on their own.

Prior to closing argument, the trial court explained its reasoning for denying defendant's motion to strike the gang testimony was twofold: "because the testimony had come in without objection previously and also because I viewed that the testimony was admissible for the limited purpose of explaining the officer's background, experience, and expertise." Defendant claims the trial court erred in failing to grant his motion to strike the testimony relating to gangs, the prosecutor engaged in misconduct by eliciting additional details regarding Tyree's experience, the trial court "abrogated its duty to exclude irrelevant evidence" (boldface omitted), and his trial counsel's failure to preserve any of these issues constituted ineffective assistance of counsel. We find defendant's arguments without merit.

## A.      Defendant's motion to strike was properly denied

Defendant claims the trial court erred in denying the motion to strike the evidence relating to Tyree's background, training, and experience because Tyree's "expertise [was] never called into question, never challenged, rendering any testimony on these matters irrelevant and inadmissible." We disagree.

Evidence is admissible only if it is relevant. (Evid. Code, § 350.) All relevant evidence is admissible except as otherwise provided by a statutory or constitutional exclusionary rule. (See Cal. Const., art. I, § 28, subd. (f)(2); Evid. Code, § 351.)

Relevant evidence is defined as "evidence, *including evidence relevant to the credibility of a witness* … having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid. Code, § 210, italics added.)  The general test of relevance "'is whether the evidence tends "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.'"  (*People v. Bivert* (2011) 52 Cal.4th 96, 116.)  A trial court enjoys broad discretion in determining the relevancy of evidence.  (*People v. Cash* (2002) 28 Cal.4th 703, 727.)  We review a trial court's rulings on relevance and the admissibility of evidence for abuse of discretion.  (*People v. Aguilar* (2010) 181 Cal.App.4th 966, 973.)

Defendant's argument that Tyree's expertise was not challenged misses the mark.  As an expert, Tyree was able to give an opinion on certain matters, including the purpose of the objects manufactured by defendant.  The prosecution was entitled to fully examine Tyree about his qualifications to allow the jury sufficient evidence to weigh his testimony.  (*Moore v. Belt* (1949) 34 Cal.2d 525, 532 [a "party is entitled to examine an expert witness as to his qualifications and experience so that the full weight to be accorded his testimony will become apparent"].)  That Tyree received much of his knowledge through his work in the gang unit was relevant to evaluate his opinion.  As such, his background, training, and experience were relevant to allow the jury to evaluate his opinion as to the weapons.  Specifically, he testified as a gang unit officer with significant experience speaking with inmates and getting information from them about trends among the inmates in prison.  Often inmates do not want to cooperate with law enforcement, however, some inmates become informants.  Once gang members become informants, they provide information to the officers.  This information is very helpful because it is from the inmate's vantage point and allows the officers to learn information they normally would not receive.  Tyree had received information from informants and learned from informants how weapons are made inside the prison.  This background information allowed the jury to evaluate Tyree's opinion regarding the use of the objects at issue.

21.

The trial court did not abuse its discretion in allowing the testimony regarding Tyree's training and experience to stand. Furthermore, the trial court specifically instructed the jury the information relating to gangs was relevant only to evaluate Tyree's experience, and informed the jury the evidence was not related to the charges or to defendant. The jury is presumed to follow this instruction. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) Thus, any prejudice from the testimony was dispelled.

Because we find the evidence was relevant to allow the jury to evaluate Tyree's opinion, defendant's further argument that the trial court abrogated its duty to exclude irrelevant evidence also necessarily fails.

**B.      Claimed prosecutorial misconduct**

Defendant argues the prosecutor engaged in misconduct by "specifically elicit[ing] additional gang testimony from Tyree." However, defendant failed to object on the basis of prosecutorial misconduct at trial. Indeed, defendant lodged no objection whatsoever to the testimony he now claims was error. It is well settled a defendant "must make a timely objection and request an admonition to cure any harm" in order to preserve a claim of prosecutorial misconduct. (*People v. Frye* (1998) 18 Cal.4th 894, 969, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Not only did defendant fail to object on prosecutorial misconduct grounds, he failed to object to any "additional gang testimony." Thus, his claim has been forfeited. (*People v. Brown* (2003) 31 Cal.4th 518, 553; *People v. Hill* (1998) 17 Cal.4th 800, 820.)

Anticipating this ruling, defendant argues the issue was not forfeited because any objection would have been futile. While the court will excuse the failure to object where the record discloses such an objection would have been futile (*People v. Hill*, *supra*, 17 Cal.4th at p. 820), such a finding is not supported by the record here. The only objection defendant made regarding the gang testimony was in fact sustained. Although the trial court did not grant the motion to strike because the evidence had some bearing on Tyree's qualifications, the trial court limited the testimony to the relevant issue and gave

22.

no indication any further objections or motions would have been summarily denied. Thus, defendant has not demonstrated any further objection would have been futile.

In the alternative, defendant argues his trial counsel was ineffective for failing to object. In order to sustain a claim for ineffective assistance of counsel, a defendant must show trial counsel's "representation fell below an objective standard of reasonableness" (*Strickland v. Washington* (1984) 466 U.S. 668, 688), and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*id*. at p. 694). Here, defendant cannot establish any prejudice from the introduction of the testimony.

Even assuming the evidence was irrelevant and trial counsel should have objected, the testimony was not prejudicial. Tyree's testimony must be considered in the context it was given. Tyree testified as an expert. His testimony provided only general information regarding gangs as it related to his duties at the prison and his training for his position. Tyree never intimated any of his training related in any way to defendant. Indeed, as defendant notes on appeal, there "was no foundational evidence connecting the gang evidence to [defendant] or this case." There was no indication Tyree had contact with defendant in his duties as a gang unit officer or that Tyree was in any way involved in finding the objects at issue here. Rather, he testified solely as an expert regarding prison weapons. As such, his background, training, and experience were relevant to allow the jury to evaluate his opinion as to the weapons.

None of the testimony at issue tended to demonstrate defendant was a member of a gang or the offense was gang related. The testimony was all directed at Tyree's past experiences, which allowed the jury to consider his opinions in context of his training and was in fact relevant to Tyree's credibility as a witness. Furthermore, the trial court specifically instructed the jury the "gang" testimony only related to background, training, and expertise and it was "not applicable to the charges in this case or to the defendant as charged in this case." Of course, the jury is presumed to have followed this instruction

23.

by the trial court. As none of the testimony related to defendant, there was no prejudice in the general discussion of gangs as relevant to Tyree's experience.

Further, we note the evidence of defendant's guilt in this case was overwhelming. Defendant admitted making the objects at issue, claiming they were sewing needles and thus admitting they were sharp. Defendant's entire defense hinged on the premise the objects had a harmless use and therefore did not qualify as sharp instruments. However, this was not a valid defense. Given the relevance of the testimony as related to Tyree's experience, the lack of any evidence linking defendant to any gang activity, and the overwhelming evidence of guilt in the matter, there is no reasonable probability defendant would have received a more favorable outcome had the challenged evidence been excluded.

We further reject defendant's argument the evidence was prejudicial because defendant had various tattoos on his body as noted in the section 969b packet. Defendant asks this court to speculate the jury saw the tattoos on defendant's person and concluded they were gang related. We decline defendant's invitation. There is no evidence in the record the tattoos as described in the section 969b packet were gang related. There was certainly no evidence as to the meaning of any of defendant's tattoos and no evidence linking the tattoos to any street gang. Consequently, defendant's argument fails.

## IV. Defendant Was Improperly Convicted of Two Counts of Manufacturing a Sharp Instrument

Relying on the Third District Court of Appeal's decisions in *People v. Kirk* (1989) 211 Cal.App.3d 58 and *People v. Rowland* (1999) 75 Cal.App.4th 61, defendant contends one of his convictions must be reversed as his actions only constituted one violation of section 4502, subdivision (b). We agree.

In *People v. Kirk*, the court addressed whether the simultaneous possession of two sawed-off shotguns constituted two separate violations of former section 12020, subdivision (a). In addressing this question, the court began with the language of the statute, which prohibited the possession of "any instrument or weapon of the kind

24.

commonly known as a … sawed-off shotgun." (*People v. Kirk*, *supra*, 211 Cal.App.3d at p. 60.)  The court explained as "used in criminal statutes, the word 'any' has long been construed as ambiguously indicating the singular or the plural." (*Id*. at p. 62.)  As such, the court found the statute facially ambiguous on the issue of whether simultaneous multiple possession of the prohibited object allowed for separate convictions. (*Id*. at p. 65.)

Because the use of the term "any" in that statute was ambiguous, the court turned to the legislative history of the statute to determine its intent.  Nothing in the legislative history, however, clarified the ambiguity.  Therefore, the court found the "defendant is entitled to the benefit of the statutory ambiguity" and employed the rule of lenity, interpreting the statute as allowing for only a single conviction of the statute when there are multiple, contemporaneous possessions. (*People v. Kirk*, *supra*, 211 Cal.App.3d at pp. 65-66.)

After *Kirk* was decided, the Legislature sought to overturn its holding by amending former section 12001 to add two new subdivisions.  The additional subdivisions provided "notwithstanding the fact that the term 'any firearm' may be used in [certain specified] sections, each firearm … shall constitute a distinct and separate offense under those [specified] sections." (See *People v. Rowland*, *supra*, 75 Cal.App.4th p. 65.)  Subsequently, the Third Appellate District addressed the issue again in *People v. Rowland*.  There, the defendant was convicted of three counts of violating section 4502, subdivision (a) for possessing three sharpened wooden shafts. (*Rowland*, *supra*, at p. 63.)  In determining whether the three separate convictions were valid, the court analyzed the language of the statute, noting it prohibited the possession of "*any* dirk or dagger or sharp instrument." (*Id*. at p. 65.)  Relying on its prior holding in *Kirk*, the court explained the use of "any" rather than "a," "created an ambiguity in the statute so that the statute failed to provide a warning that separate convictions would result for each weapon simultaneously possessed." (*Rowland*, at p. 65.)  Because section 4502, subdivision (a) used similar language as that in issue in *Kirk*, the court held the "defendant is subject to

25.

only one conviction for his simultaneous possession of three sharp wooden sticks in prison." (*People v. Rowland*, *supra*, at p. 65.)

The court then addressed the statutory amendments enacted by the Legislature in response to its prior opinion in *Kirk*, finding

> "further support for this interpretation of the statute in legislative action, or inaction as the case may be, taken subsequent to the publication of *Kirk*. In 1994, specifically in response to *Kirk*, the Legislature amended section 12001 by adding new subdivisions (k) and (*l*). (Stats. 1994, First Ex. Sess. 1993-1994, ch. 32, § 1.) The new sections provided as follows: [¶] '(k) For purposes of Sections 12021, 12021.1, 12025, 12070, 12072, 12073, 12078, and 12101 of this code, and Sections 8100, 8101, and 8103 of the Welfare and Institutions Code, notwithstanding the fact that the term "any firearm" may be used in those sections, each firearm or the frame or receiver of the same shall constitute a distinct and separate offense under those sections. [¶] (*l*) For purposes of Section 12020, a violation of that section as to each firearm, weapon, or device enumerated therein shall constitute a distinct and separate offense.'

> "These new subdivisions were added with the express intent of overruling the holding in *People v. Kirk* 'insofar as that decision held that the use of the term "any" in a weapons statute means that multiple weapons possessed at the same time constitutes the same violation.' (Stats. 1994, First Ex. Sess. 1993-1994, ch. 32, § 5.) Conspicuously absent from the new subdivisions (k) and (*l*) is any mention of section 4502, subdivision (a), the statute at issue here.

> "Application of the rule of statutory construction, *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), suggests that, with the addition of new subdivisions (k) and (*l*), the Legislature intended to permit application of the *Kirk* holding to any statute not specifically listed in the new subdivisions." (*People v. Rowland*, *supra*, 75 Cal.App.4th at pp. 65-66, fn. omitted.)

While both *Kirk* and *Rowland* specifically addressed possession of certain weapons, we find the reasoning of those cases equally applicable to defendant's conviction of manufacturing a sharp instrument under section 4502, subdivision (b). Like section 4502, subdivision (a), subdivision (b) prohibits the "manufacture … [of] *any* dirk or dagger or sharp instrument." (Italics added.) As the language of the two subdivisions is identical, the reasoning is equally applicable here. Further, we note *Rowland* seemed

26.

to address this issue of the application of its reasoning to statutes that prohibit acts other than simple possession. In addressing the legislative amendments in response to *Kirk*, it noted the Legislature added the following language:

> "'It is the further intent of the Legislature in enacting this act that where multiple weapons are made, imported, transferred, received, or possessed, each weapon shall constitute a separate and distinct violation.' (Stats. 1994, First Ex. Sess. 1993-1994, ch. 32, § 5.)" (*People v. Rowland*, *supra*, 75 Cal.App.4th at p. 66.)

*Rowland* interpreted this language "as broadening the legislative overruling of the *Kirk* rule to include, not just the *possession* of illegal weapons at issue in *Kirk*, but also the manufacture, importation, sale, lease, receipt, *or* possession that is proscribed in the statutes specifically listed in subdivisions (k) and (*l*)." (*People v. Rowland*, *supra*, 75 Cal.App.4th at pp. 66-67.)

We agree with this interpretation. By clarifying its intent to allow multiple convictions when "multiple weapons are made" in relation to only specific enumerated sections of the Penal Code, the Legislature declared its intent that it apply only to those sections. As section 4502 is not among the enumerated statutes, the rule as clarified by *Rowland* stands.

Here, defendant was convicted of two counts of manufacturing or attempting to manufacture a sharp instrument. It was clear from the testimony these items were manufactured contemporaneously, indeed one being used to modify the other. We reject plaintiff's argument the multiple convictions could be based upon defendant's reference to previously manufacturing two additional sewing needles as defendant was only charged with the two objects recovered in this case.

Additionally, we find plaintiff's reliance on *People v. Clair* (2011) 197 Cal.App.4th 949 misplaced. *Clair* dealt with whether multiple acts of distributing child pornography could be separately punished under section 654. The issue was whether defendant harbored multiple intents and objectives, not whether the legislative intent in

27.

drafting the statute underlying the conviction permitted multiple convictions. (*Clair*, at p. 959.) Thus, *Clair* did not address the issue raised here.

Defendant was convicted of two counts of simultaneously manufacturing two sharp instruments. Because section 4502 has been interpreted to only allow for one conviction under these circumstances, one of defendant's convictions must be reversed.

**DISPOSITION**

The judgment of conviction on count 2, manufacturing a sharp instrument, is reversed and defendant's sentence is modified to six years, which reflects his sentence on count 1. The trial court is ordered to amend the abstract of judgment accordingly and forward copies of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.

_____

PEÑA, J.

WE CONCUR:

_____

GOMES, Acting P.J.

_____

OAKLEY, J.*

---

*Judge of the Madera Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

28.